**In the Matter of U.G.V., A Juvenile.**

No. 08–04–00039–CV.

Court of Appeals of Texas,
El Paso.

July 14, 2005.

M. Clara Hernandez, El Paso County Public Defender, El Paso, for Appellant.

Jose R. Rodriguez, County Attorney, El Paso, for Appellee.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

DAVID WELLINGTON CHEW, Justice.

This is an appeal from an order of commitment to the Texas Youth Commission. In his sole issue, U.G.V. contends the trial court abused its discretion by applying the 2003 version of Section 54.05(k) of the Texas Family Code ("Section 54.05(k)(2003)") to determine his eligibility for placement in the Texas Youth Commission and that this *ex post facto* or retroactive application of Section 54.05(k)(2003) violated his federal and Texas constitutional rights. We affirm.

The State filed its first petition based on delinquent conduct against U.G.V. on February 18, 2002 for the offense of aggravat-

ed assault allegedly committed on or about February 14, 2002. The petition was amended to allege a misdemeanor assault and on February 21, 2002, U.G.V. stipulated to the misdemeanor assault allegation in an adjudication hearing. On March 19, 2002, U.G.V. was placed on supervised probation.

On September 4, 2003, the State filed its second petition based on delinquent conduct. On September 11, 2003, U.G.V. stipulated to counts 3, 4, and 8 in the State's amended petition, namely the following allegations: (1) possession of inhalant substances on or about March 27, 2003; (2) misdemeanor graffiti on or about April 1, 2003; and (3) misdemeanor graffiti on or about June 13, 2003. The remaining counts of the amended petition were dismissed. On September 24, 2003, the court placed U.G.V. on intensive supervised probation under the serious offender habitual offender comprehensive action program ("SHOCAP").

On October 23, 2003, the State filed a motion to modify disposition for violation of the terms and conditions of U.G.V.'s probation. That same day, the State also filed a petition based on delinquent conduct for the alleged offense of possession of inhalants. At the hearing, U.G.V. plead true to one of the allegations in the motion to modify disposition—four instances of truancy occurred between September 26, 2003 and October 14, 2003. The trial court accepted U.G.V.'s plea of true, dismissed the remaining allegation in the motion to modify disposition, and dismissed the State's petition based on delinquent conduct.

On January 15, 2004, the trial court held a disposition hearing. Noemi Ramos, U.G.V.'s probation officer, testified at the hearing. Ms. Ramos prepared the modification disposition report in this case, which was admitted into evidence. A psychiatric evaluation report and a psychological evaluation report were also admitted into evidence at the hearing. Ms. Ramos stated that she believed U.G.V. was in need of rehabilitation and that it was the recommendation of the El Paso County Juvenile Probation Department that U.G.V. be committed to the care, custody, and control of the Texas Youth Commission (TYC). This recommendation was based upon the juvenile's lengthy probation history as detailed in Ms. Ramos' report. In particular, Ms. Ramos testified to U.G.V.'s history of inhalant abuse, marijuana abuse, and prior gang membership. In her report, Ms. Ramos found that U.G.V.'s problems included poor school performance, truancies, several school suspensions, and twice failing to complete local drug rehabilitation through Aliviane. Ms. Ramos believed that the TYC could address U.G.V.'s educational needs and his substance abuse problems through individual and group substance abuse counseling.

According to Ms. Ramos, U.G.V. was a danger to himself due to his frequent inhalant abuse. Ms. Ramos testified that there was a deviation in the sanction level for this case because U.G.V. is not a United States citizen. Because of his alienage and his diagnosis of slight mental retardation, U.G.V. was found not eligible for Challenge Boot Camp Program and the department did not consider another out-of-home placement. Ms. Ramos believed that the department had exhausted all of its resources with regard to this juvenile, that his parents had contributed to his delinquency, and that her recommendation was in the best interest of U.G.V. and the community.

At the hearing, the State offered a memorandum from the general counsel of the El Paso County Juvenile Probation Department on U.G.V.'s eligibility for placement in the TYC. U.G.V. objected, arguing

that he was not eligible for TYC placement because when he was placed on probation, the eligibility standard was three adjudications, but had since changed to two adjudications and a modification. U.G.V. argued that applying the change in law to him would amount to an *ex post facto* violation.[1] The trial court, however, found that U.G.V. was eligible for placement and denied the objection.

The trial court followed the department's recommendation and in its order of commitment found that U.G.V. was in need of rehabilitation; that the juvenile and the public requires that disposition be made; and that the disposition was in U.G.V's best interest because he had no parents to supervise, control, or discipline him nor does he lend himself to suitable supervision, control, or discipline. The trial court also found that reasonable efforts had been made to prevent removal from his home, specifically: supervised probation; intensive supervised probation, psychological and psychiatric services; and substance abuse counseling through Aliviane. The stated reasons for the disposition included: (1) that the juvenile needed to be held accountable and responsible for his delinquent behavior; (2) that he poses a risk to the safety and protection of the community if no disposition was made; (3) that there was no community-based intermediate sanctions available that would adequate address the needs of the juvenile or adequately protect the needs of the community; and (4) the juvenile's prior record required that he be confined in a secure facility. U.G.V. now brings this appeal.

In his sole issue, U.G.V. contends the trial court abused its discretion in its modification of his disposition to the TYC by applying Section 54.05(k)(2003) to determine his eligibility for placement in the TYC instead of the 2001 version of Section 54.05(k)("Section 54.05(k) (2001)"). U.G.V. asserts that Section 54.05(k)(2001) was the applicable law in his case because the conduct giving rise to the previous adjudication occurred before the effective date of Section 54.05(k)(2003). Further, U.G.V. contends the trial court's *ex post facto* or retroactive application of Section 54.05(k)(2003) subjected him to increased punishment and violated his federal and state constitutional rights.

We review a juvenile court's determination concerning a suitable disposition for a child who has been found to have engaged in delinquent conduct under an abuse of discretion standard. *In the Matter of A.S.*, 954 S.W.2d 855, 861 (Tex.App.-El Paso 1997, no pet.). An abuse of discretion does not occur as long as some evidence of substantive and procedural character exists to support the trial court's decision. *In re E.R.L.*, 109 S.W.3d 123, 128 (Tex.App.-El Paso 2003, no pet.). Absent an abuse of discretion, we will not disturb the juvenile court's determination. *Id.*

Modifications of disposition proceedings are governed by Section 54.05 of the Texas Family Code. *See* Tex.Fam.Code Ann. 54.05 (Vernon Supp.2004–05). Prior to September 1, 2003, Section 54.05(k) provided that the court may modify a disposition under Subsection (f)[2] that is based on a

---

**1.** U.G.V. also raised the same objections in a motion for new trial, which was denied by operation of law.

**2.** Subsection (f) provides that "[A] disposition based on a finding that the child engaged in delinquent conduct that violates a penal law of this state or the United States of the grade

of felony or, if the requirements of Subsection (k) are met, of the grade of misdemeanor, may be modified so as to commit the child to the Texas Youth Commission if the court after a hearing to modify disposition finds by a preponderance of the evidence that the child violated a reasonable and lawful order of the

finding that the child engaged in delinquent conduct that violates a penal law of the grade of misdemeanor if: (1) the child has been adjudicated as having engaged in delinquent conduct violating a penal law of the grade of felony or misdemeanor on at least two previous occasions; and (2) of the previous adjudications, the conduct that was the basis for one of the adjudications occurred after the date of another previous adjudication.[3] Several courts, including this Court, have held that Section 54.05(k)(2001) requires a total of three adjudications in order to modify a disposition to commit a juvenile to the TYC. *See e.g., In re C.E.T.*, No. 08–03–00125–CV, 2004 WL 596219, at *2 (Tex.App.-El Paso Mar.26, 2004, no pet.)(not designated for publication); *In re J.W.*, 118 S.W.3d 927, 929 (Tex.App.-Dallas 2003, pet. denied); *In re S.B.*, 94 S.W.3d 717, 719 (Tex.App.-San Antonio 2002, no pet.); *In re A.I.*, 82 S.W.3d 377, 380–81 (Tex.App.-Austin 2002, pet. denied); *In re. N.P.*, 69 S.W.3d 300, 302 (Tex.App.-Fort Worth 2002, pet. denied).

In 2003, the Texas Legislature amended Section 54.05(k) to require only one previous adjudication, thus, a total of two adjudications, not three, are required in order to modify a disposition to commit a juvenile to the TYC.[4] *See* Acts of 2003, 78th Leg., R.S., ch. 283, 21, 2003 Tex.Gen.Laws 1221, 1227. The amendment took effect on September 1, 2003. *See* Acts of 2003, 78th Leg., R.S., ch. 283, 62, 2003 Tex.Gen.Laws 1221, 1245. Sections 62(b) and (c) of the amendatory act provide the following savings provision clauses:

> (b) Except as provided by Subsections (d), (e), and (g) of this section, this Act applies only to conduct that occurs on or after the effective date of this Act. Conduct violating the penal law of this state occurs on or after the effective date of this Act if any element of the violation occurs on or after that date.

> (c) Conduct that occurs before the effective date of this Act is governed by the law in effect at the time the conduct occurred, and that law is continued in effect for that purpose.

Acts of 2003, 78th Leg., R.S., ch. 283, 62(b) & (c), 2003 Tex.Gen.Laws 1221, 1245.

U.G.V. asserts that Section 54.05(k)(2003) was not the applicable law in his case because the conduct that gave rise to his second adjudication occurred before September 1, 2003, the effective date of the amended statute. Consequently, U.G.V. contends, the trial court abused its discretion in its modification of his disposition because the applicable law was Section 54.05(k) (2001). The State, however,

---

court." Tex.Fam.Code Ann. § 54.05(f)(Vernon Supp.2004–05).

3. Acts of 1999, 76th Leg., R.S., ch. 1448, § 2, 1999 Tex.Gen.Laws 4919, 4920–21, amended by Acts of 2001, 77th Leg., R.S., ch. 1297, § 28, 2001 Tex.Gen.Laws 3142, 3154 (redesignated as Section 54.05(k)), amended by Acts of 2003, 78th Leg., R.S., ch. 283, § 21, 2003 Tex.Gen.Laws 1221, 1227, eff. date Sept. 1, 2003 (current version at Tex.Fam.Code Ann. § 54.05(k)(Vernon Supp.2004–05)).

4. Section 54.05(k) now provides that:
The court may modify a disposition under Subsection (f) that is based on an adjudication that the child engaged in delinquent conduct that violates a penal law of the grade of misdemeanor if:
(1) the child has been adjudicated as having engaged in delinquent conduct violating a penal law of the grade of felony or misdemeanor on at least one previous occasion before the adjudication that prompted the disposition that is being modified; and
(2) the conduct that was the basis of the adjudication that prompted the disposition that is being modified occurred after the date of the previous adjudication.
Tex.Fam.Code Ann. § 54.05(k)(Vernon Supp. 2004–05).

argues that Section 54.05(k)(2003) is the controlling law because the modification of disposition was based on conduct which occurred after September 1, 2003, that is, the violations of probation that occurred in September and October 2003. Since the amendatory act includes a savings provision clause which makes the amended statute only applicable to "conduct that occurs on or after the effective date of [September 1, 2003]," this Court must decide what the Legislature intended would constitute "conduct" in the context of Section 54.05 modifications of disposition proceedings.

 Statutory construction issues are legal questions reviewed *de novo. Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989). In construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent. *See McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex.2003), *citing Tex. Dep't of Transp. v. Needham,* 82 S.W.3d 314, 318 (Tex.2002). We look first to the statute's plain and common meaning; if the statutory language is unambiguous, we will interpret the statute according to its plain meaning. *McIntyre,* 109 S.W.3d at 745. However, if the statute is ambiguous, we then consider other matters to ascertain the Legislature's intent, including the objective of the law, the legislative history, and the consequences of a particular construction. *See McIntyre,* 109 S.W.3d at 745; *In re Bay Area Citizens Against Lawsuit Abuse,* 982 S.W.2d 371, 380 (Tex.1998); Tex. Gov't Code Ann. § 311.023 (Vernon 2005). In addition, an interpretation of a statute which would produce "absurd" results is to be avoided. *Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 249 (Tex.1991).

Under Section 54.05, a juvenile court may modify any disposition, except a commitment to the Texas Youth Commission, until the child reaches his 18th birthday or is earlier discharged by the court or operation of law. *See* Tex.Fam.Code Ann. § 54.05(a). In order to modify a disposition so as to commit the child to the Texas Youth Commission, that disposition must be: (1) based on a finding that the child engaged in delinquent conduct that violates a penal law of this state or the United States of the grade of felony or (2) if the requirements of Subsection (k) are met, of the grade of misdemeanor. *See* Tex.Fam.Code Ann. § 54.05(f). Further, in order to modify a disposition the court, after a modification of disposition hearing, must find by a preponderance of the evidence that the child violated a reasonable and lawful order of the court. *See id.* As discussed above, Section 54.05(k)(2003) allows the court to modify a disposition that is based on an adjudication that the child engaged in delinquent conduct that violates a penal law of the grade of misdemeanor if: (1) the child has one previous adjudication (felony or misdemeanor) before the adjudication that prompted the disposition that is being modified; and (2) the conduct that was the basis for the adjudication that prompted the disposition that is being modified occurred after the date of the previous adjudication. *See* Tex.Fam.Code Ann. § 54.05(k). Clearly, the Subsection (k) requirements serve to qualify the court's ability to modify a disposition such as to commit the juvenile to the TYC when the adjudication that is the basis for the disposition to be modified is a misdemeanor level offense. Thus, the requirements of Subsection (k) do not stand alone, but rather must be read in the context of Subsection (f).

Importantly, under Subsection (f), in order to modify a disposition to commit a juvenile to the TYC, the court must find by a preponderance of the evidence that the child violated a reasonable and lawful order of the court. *See* Tex.Fam.Code Ann. § 54.05(f). By the plain language of

the statute, the court's finding of a violation is the relevant conduct that may result in modification of a disposition to commitment in the TYC. Subsection (k), in contrast, merely places certain requirements on the court's ability to modify a disposition of an adjudication that is based on a misdemeanor level offense, that is, by requiring a previous and separate adjudication (felony or misdemeanor). *See* Tex. Fam.Code Ann. § 54.05(k).

█ In this case, the State filed a motion to modify disposition on October 23, 2003. The motion alleged that U.G.V. had violated the terms and conditions of his probation, namely, four instances of truancy which occurred between September 26, 2003 and October 14, 2003. U.G.V. pled true to the truancy allegation and the court accepted the plea of true. Since the violation of probation occurred after September 1, 2003, the Subsection (k) requirements, as amended, had to be met in order for the court to modify U.G.V.'s second misdemeanor adjudication. Under Subsection (k), the conduct that was the basis of the second adjudication need only occur after the date of the previous adjudication. *See* Tex.Fam.Code Ann. § 54.05(k). Despite U.G.V.'s contentions, we conclude that the Legislature intended that the savings provision clause of the 2003 amendatory act would apply to conduct which was the subject of the modification of disposition hearing under Subsection (f), that is, the conduct which formed the basis for the trial court's finding that the juvenile violated a reasonable and lawful order of the court. Since U.G.V.'s violation of probation occurred after September 1, 2003, Section 54.05(k)(2003) was the applicable law.

Within his sole issue, U.G.V. also asserts that the application of Section 54.05(k)(2003) violated his federal and Texas constitutional rights because it is an *ex post facto* or retroactive law. Specifically, U.G.V. argues that his federal constitutional rights were disregarded during the disposition hearing because the application of the 2003 statute increased punishment for conduct occurring before the effective date. U.G.V. also contends that he was entitled to rely on the 2001 statute's explicit restriction on the collateral consequences of his previous adjudication.

█ Within the criminal context, "ex post facto" refers to any law passed after the commission of an act which retrospectively changes the consequences of the act. *Bowers v. State*, 914 S.W.2d 213, 216 (Tex.App.-El Paso 1996, pet. ref'd), *citing Grimes v. State*, 807 S.W.2d 582, 583–84 (Tex.Crim.App.1991). Although juvenile delinquency proceedings are nominally considered civil proceedings, they are indisputably quasi-criminal in nature. *In re R.S.C.*, 940 S.W.2d 750, 751 (Tex.App.-El Paso 1997, no writ); *see also In re M.A.F.*, 966 S.W.2d 448, 450 (Tex.1998)(recognizing the quasi-criminal nature of juvenile cases). Accordingly, a juvenile is guaranteed the constitutional rights he would have as an adult in a criminal proceeding, because the juvenile delinquency procedures seek to deprive him of his liberty. *C.E.J. v. State*, 788 S.W.2d 849, 852 (Tex. App.-Dallas 1990, writ denied), *citing Smith v. Rankin*, 661 S.W.2d 152, 153 (Tex.App.-Houston [1st Dist.] 1983, no writ)(orig. proceeding). Therefore, we find it appropriate to consider U.G.V.'s federal constitutional claim.[5]

---

5. U.G.V. also asserts that Article I, § 16 of the Texas Constitution may provide greater protection from *ex post facto* or retroactive laws in a juvenile case because it covers civil as well as criminal matters. *See In re Shaw*, 966 S.W.2d 174, 179 (Tex.App–El Paso 1998, no pet.) (prohibition against ex post facto laws found in the Texas Constitution applied both

*Federal Constitutional Claim*

 The United States Constitution prohibits *ex post facto* laws, that is, laws which: (1) punish as a crime an act previously committed which was innocent when done; (2) change the punishment and inflict a greater punishment than the law attached to a criminal offense when committed; (3) deprive a person charged with a crime of any defense available at the time that the act was committed; or (4) alter the legal rules of evidence and receive less or different evidence to convict than the law required at the time the act was committed. *Collins v. Youngblood,* 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990); *Rodriguez v. State,* 93 S.W.3d 60, 66–7 (Tex.Crim.App.2002); *see also* U.S. Const. art. I, § 9. U.G.V. argues that the application of the 2003 statute increased punishment for conduct he committed before the effective date, therefore, he asserts his *ex post facto* rights were violated under the second category.

U.G.V.'s first adjudication was for a misdemeanor assault committed on or about February 14, 2002. As a result of this adjudication, U.G.V. was placed on supervised probation. On September 4, 2003, the State filed its second petition based on delinquent conduct. U.G.V. stipulated to various misdemeanor offenses which occurred on or about March 27, 2003, April 1, 2003, and June 13, 2003. On September 24, 2003, U.G.V. was placed on intensive supervised probation. As discussed above,

Section 54.05(k)(2001) provided that a juvenile must have at least two adjudications prior to the one which the State was seeking to modify in order for the court to commit the juvenile to the TYC in a modification of disposition proceeding, but the 2003 version requires only one previous and separate adjudication prior to the adjudication to be modified.[6] By applying Section 54.05(k)(2003), U.G.V. was eligible to commitment to the TYC because he had one previous and separate adjudication prior to the September 2003 adjudication of which the State sought to modify the disposition. Application of the 2003 statute, however, did not change or increase the punishment imposed for his first and second adjudication. Rather, modification of disposition was sought for conduct that occurred after the effective date of the 2003 statute. As a result of U.G.V.'s status of having a previous and separate adjudication prior to the adjudication to be modified, he was eligible for commitment to the TYC. The application of the 2003 statute did not increase punishment for U.G.V.'s prior conduct, therefore, in this respect there was no *ex post facto* violation.

Relying on *Scott v. State,* 55 S.W.3d 593 (Tex.Crim.App.2001), U.G.V. further contends that he was entitled to rely on the statutory restriction provided in Section 54.05(k)(2001), because it limited the collateral consequences of his adjudication. In so arguing, U.G.V. asserts that the remov-

---

to civil and criminal laws). U.G.V. cites no authority in support of this contention nor does he present any argument that the Texas Constitution may provide greater protection in the criminal context. Since we have decided to review U.G.V.'s federal constitutional claim and U.G.V. does not argue that his *ex post facto* right differs under the Texas Constitution, we only reach his federal claim. *See Heitman v. State,* 815 S.W.2d 681, 690–91 n. 23 (Tex.Crim.App.1991).

6. See Acts of 1999, 76th Leg., R.S., ch. 1448, § 2, 1999 Tex.Gen.Laws 4919, 4920–21, amended by Acts of 2001, 77th Leg., R.S., ch. 1297, § 28, 2001 Tex.Gen.Laws 3142, 3154 (redesignated as Section 54.05(k)), amended by Acts of 2003, 78th Leg., R.S., ch. 283, § 21, 2003 Tex.Gen.Laws 1221, 1227, eff. date Sept. 1, 2003 (current version at Tex. Fam.Code Ann. § 54.05(k)(Vernon Supp. 2004–05)).

al of the statutory restriction increased the punishment and such an increase constitutes an *ex post facto* law.

In *Scott*, the defendant pleaded guilty to indecency with a child in exchange for deferred adjudication. *Scott*, 55 S.W.3d at 595. At the time Scott entered his plea, the deferred adjudication statute prohibited use of a successfully completed deferred adjudication to enhance punishment for a subsequent offense. *Id.* at 595–96. The Legislature later amended the deferred adjudication statute and the Penal Code such that a dismissal and discharge of a deferred adjudication counted as a previous conviction for purposes of enhancing the punishment for aggravated sexual assault to life imprisonment. *See id.* at 595–96. Subsequently, Scott was convicted for aggravated sexual assault and his discharged deferred adjudication was deemed a conviction for enhancement purposes. *Id.* at 595. The Court of Criminal Appeals, however, held that the enhancement of punishment was an *ex post facto* violation because when Scott entered his guilty plea, he was entitled to rely on the language in the prior statute that explicitly limited the collateral consequences of deferred adjudication. *Id.* at 597.

Although Section 54.05(k)(2003), in conjunction with Section 54.05(f), operates in a manner that we agree is somewhat analogous to enhancement of punishment statutes, unlike *Scott*, Section 54.05 does not contain any explicit restriction on the collateral consequences of U.G.V.'s adjudication in modification of disposition proceedings. Instead, Section 54.05(k) (2003) is more similar to enhancement statutes that penalize the new criminal offense being enhanced rather than the prior offense used for enhancement, which the United States Supreme Court and the Texas Court of Criminal Appeals have declined to find violative of the *ex post facto* prohibi-

tion. *See Scott*, 55 S.W.3d at 597. We conclude that application of Section 54.05(k) (2003) in this case did not violate U.G.V.'s *ex post facto* constitutional right. U.G.V.'s sole issue is overruled.

Finding no abuse of discretion by the trial court, we affirm the trial court's commitment order.