COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| | § | No. 08-12-00306-CV |
| IN THE INTEREST OF A.J.S., | § | Appeal from the |
| A JUVENILE. | § | 65th Judicial District Court |
| | § | of El Paso County, Texas |
| | § | (TC# 1101038) |
| | § | |

## O P I N I O N

A.J.S., a juvenile, appeals the trial court's delinquency judgment stemming from burglary of a habitation. In two issues, Appellant contends that the trial court denied him his constitutional right to a public trial by excluding family members from the courtroom during voir dire, and that the court erred by failing to instruct the jury that it could disregard any confession derived from unlawful interrogation. Because we find that the trial court's total closure of the courtroom to the public violated Appellant's due process rights, we reverse and remand.

## BACKGROUND

Appellant was charged with delinquency resulting from burglary of a habitation, to which Appellant pleaded not true. Prior to trial, Appellant filed a Defendant's Motion for Public Hearings [C.R. 89]. In the motion, Appellant maintained that he had a Sixth Amendment right to an open and public hearing. He also asserted that any closure, to be constitutional, must meet

four requirements: (1) "The party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced[;]" (2) "The closure must be no broader than necessary to protect that interest[;]" (3) "The trial court must consider reasonable alternatives to closing the proceedings[;]" (4) The trial court must make findings adequate to support the closure." At a pretrial motions hearing, counsel for Appellant requested "five to six seats" for Appellant's family members to attend voir dire. The trial court initially denied the request before eventually granting one seat to family members. The next day, prior to the start of voir dire, Appellant's counsel lodged the following objection:

> [APPELLANT'S COUNSEL]: Your Honor, it's just been brought up to my attention that, in speaking with the bailiff, the courtroom has been closed and no members of the public are being allowed in. I'm going to lodge my objection. There are other members of the family that requested to come in and witness the voir dire, and I'm lodging my objection.
>
> THE COURT: All right, sir. Your objection is noted and overruled.

The record does not contain any other indications of why the trial court closed voir dire proceedings, or if the proceedings were eventually re-opened to the public. Following voir dire and trial, the jury found Appellant delinquent. The trial court ordered that he be placed on probation until his eighteenth birthday, but terminated probation early at the State's request while this appeal was pending.

## DISCUSSION

In Issue One, Appellant avers that the court violated his constitutional right to a public trial by restricting his family's access to the courtroom during voir dire. Both Appellant and the State operate under the predicate assumption that a juvenile has the Sixth Amendment right to a public trial in the juvenile court system. The parties' only dispute on appeal is whether this "public trial right" precluded the trial judge from excluding certain people from the courtroom

2

under TEX.FAM.CODE ANN. § 54.08 (West 2014)(providing that juvenile trials must be open to the public absent a showing of "good cause").

We note that neither side has provided us with explicit authority establishing the constitutional right to a public trial in the juvenile context, and to our knowledge, neither the United States Supreme Court nor this state's high courts have spoken directly to the issue of whether the Sixth Amendment's public trial guarantee applies in juvenile proceedings. Thus, before addressing the merits of Appellant's argument, in what appears to be an issue of first impression, we must decide whether juvenile defendants have the right to demand a public trial under the United States Constitution. We hold that juvenile defendants do possess such a right, not under the Sixth Amendment, but under the Fourteenth Amendment's Due Process Clause.

### A. Due Process in Juvenile Justice Proceedings

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. CONST. AMEND. VI. A juvenile delinquency proceeding is not a "criminal prosecution" for purposes of the Sixth Amendment. *McKeiver v. Pennsylvania*, 403 U.S. 528, 541, 91 S.Ct. 1976 1984, 29 L.Ed.2d 647 (1971). However, because proceedings in juvenile court bear many of the hallmarks and consequences of a criminal proceeding against an adult, the proceedings are quasi-criminal in nature and subject to numerous due process restrictions mirroring those at play in a full criminal trial. *In re U.G.V.*, 199 S.W.3d 1, 7 (Tex.App.--El Paso 2005, no pet.). "Though it has been long settled that the Bill of Rights applies to juvenile proceedings, to what extent remains undetermined . . . ." *Hidalgo v. State*, 983 S.W.2d 746, 750 (Tex.Crim.App. 1999). The procedural constitutional rights granted to minors in juvenile delinquency proceedings are not completely commensurate with those granted to adults, in keeping with the historical and idealistic view that extensive

3

procedural protections are unnecessary and frustrate the goals of an informal rehabilitative juvenile justice system in which delinquency proceedings are brought in *parens patriae* by the State for the child's best interest. *See McKeiver*, 403 U.S. at 550-51, 91 S.Ct. at 1988-89 (declining to incorporate the Sixth Amendment right to a jury trial against state juvenile court systems under the Fourteenth Amendment).[1] Nevertheless, the modern trend has been to "dispel the antiquated and unrealistic resistance to procedural safeguards in the juvenile court system" and find that protections afforded to criminal defendants apply at least in part to juvenile defendants, in recognition of the "grim realit[y]" that juvenile proceedings have become increasingly more formalized and punitive. *Hidalgo*, 983 S.W.2d at 751 [Internal quotes omitted]; *see also Blake v. State*, 971 S.W.2d 451, 460-61 & n.28 (Tex.Crim.App. 1998)(summarizing 1990s amendments to the Juvenile Justice Code that, *inter alia*, allowed for prison confinement upon a delinquency adjudication and expanded the list of offenses for which a minor could be tried as an adult).

Against this backdrop and lacking any definitive higher guidance on this issue, we must decide whether the Sixth Amendment's public trial guarantee is incorporated against this state's juvenile justice system by the Fourteenth Amendment. In doing so, we compare "the purposes and goals of the juvenile system" with "the particular right being asserted[,] . . . balanc[ing] the function that a constitutional or procedural right serve[s] against its impact or degree of impairment on the unique processes of the juvenile court and then factor[ing] in consideration of the degree of realistic success the juvenile system ha[s] obtained." *Lanes v. State*, 767 S.W.2d 789, 794 (Tex.Crim.App. 1989)(setting out test for incorporation of a constitutional protection into the juvenile court system procedures); *see also In re J.S.S.*, 20 S.W.3d 837, 842-43

---

[1] Although a juvenile has no right to a jury trial under the federal constitution, the Texas Legislature has extended that right to juveniles by statute. *See* TEX.FAM.CODE ANN. § 54.03(c)(West 2014).

(Tex.App.--El Paso 2000, pet. denied)(applying *Lanes* test). The overriding standard for due process is "fundamental fairness." *McKeiver*, 403 U.S. at 543, 91 S.Ct. at 1985.

Here, we find that allowing a juvenile to assert the right to a public trial does not undermine the functioning of the Texas juvenile justice system. On the contrary, the State has provided for open juvenile adjudication trials by statute since 1995. *See* TEX.FAM.CODE ANN. 54.08(a); Act of May 31, 1995, 74th Leg., ch. 262, § 45, 1995 TEX.GEN.LAWS 2517, 2541 (amending prior version of statute to remove court's ability to close a hearing in its sole discretion). "[T]he right to a public trial was created for the benefit of the accused; thus, the right is a personal one." *Lilly v. State*, 365 S.W.3d 321, 328 (Tex.Crim.App. 2012). It stems from a deep-rooted American "distrust for secret trials" and a belief that the transparency that comes with having "every criminal trial [be] subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power[,]" serving as a "safeguard against any attempt to employ our courts as instruments of persecution." *In re Oliver*, 333 U.S. 257, 268-270, 68 S.Ct. 499, 505-506, 92 L.Ed. 682 (1948). While we recognize that the juvenile's privacy is an interest the juvenile court system seeks to protect, we also see no reason why juveniles who choose to have their increasingly punitive delinquency proceedings made public should not be afforded the same constitutional protections as adults. Rather than impeding the goals of the juvenile justice system, we believe—and it seems the Texas Legislature agrees—that public delinquency proceedings (subject to the traditional Sixth Amendment strictures articulated below) serve to increase transparency.

In short, the parties' implicit assessment in their briefs is correct. Appellant had the due process right to an open trial. This holding comports with our prior precedent, in which we have found that "a juvenile is guaranteed the constitutional rights he would have as an adult in a

5

criminal proceeding, because the juvenile delinquency procedures seek to deprive him of his liberty." *In re U.G.V.*, 199 S.W.3d 1, 7 (Tex.App.--El Paso 2005, no pet.). We interpret the contours of this constitutional right in accordance with Sixth Amendment case law below.

### B. Public Trial Right
### Applicable Law and Standard of Review

Under the Sixth Amendment's public trial provision, which we find has been incorporated against the State as a component of due process in delinquency proceedings under the Fourteenth Amendment, an accused has the constitutional right to a public hearing of his case. *Lilly*, 365 S.W.3d at 328. The public trial right extends not only to the guilt-innocence phase of trial, but to voir dire as well. *Waller v. Georgia*, 467 U.S. 39, 44-5, 104 S.Ct. 2210, 2214, 81 L.Ed.2d 31 (1984); *see also Press-Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 505, 104 S.Ct. 819, 821, 78 L.Ed.2d 629 (1984)(noting in First Amendment context that "since the development of trial by jury, the process of selection of jurors has presumptively been a public process with exceptions only for good cause shown").[2] "The right to a public trial is not absolute and may be outweighed by other competing rights or interests, such as interests in security, preventing disclosure of non-public information, or ensuring that a defendant receives a fair trial." *Lilly*, 365 S.W.3d at 328. "However, such cases will be rare, and the presumption of openness adopted by the Supreme Court must be overcome." *Id*.

To constitutionally justify the complete closure of a trial: "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced; [2] the closure must be no broader than necessary to protect that interest; [3] the trial court must consider

---

[2] The Supreme Court has used First Amendment freedom of the press law in interpreting the boundaries of the Sixth Amendment public trial right, stating that "there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." *Waller*, 467 U.S. at 46, 104 S.Ct. at 2215.

reasonable alternatives to closing the hearings; and [4] it must make findings adequate to support the closure." *Waller*, 467 U.S. at 48, 104 S.Ct. at 2212. Where the trial court only partially closes a proceeding, the federal circuit courts "have adopted a less demanding test requiring the party seeking the partial closure to show only a 'substantial reason' for the closure." *United States v. Osborne*, 68 F.3d 94, 98-99 (5th Cir. 1995). The record must reflect that the trial court considered all reasonable alternatives to closure. *Lilly*, 365 S.W.3d at 328; *see also Benson v. State*, No. 04-12-00159-CR, 2013 WL 1149028, at *2*-3 (Tex.App.--San Antonio Mar. 20, 2013, no pet.)(mem. op., not designated for publication)(reversal where record failed to show that trial court considered alternatives to excluding appellant's parents from voir dire due to courtroom crowding). Violation of the public trial right at the voir dire phase is structural error requiring automatic reversal and the grant of a new trial. *Steadman v. State*, 360 S.W.3d 499, 510 (Tex.Crim.App. 2012).

### Analysis

The State maintains that the record shows the courtroom was only partially closed, subjecting this case to the broader, more lenient "substantial reason" standard set out in *Osborne*, 68 F.3d at 99. We disagree. In *Obsorne*, the trial court ordered that only existing spectators could remain in the courtroom during a child witness's testimony after the prosecution moved to completely close the proceeding to protect the minor from "emotional harm." *Obsorne*, 68 F.3d at 99. The Fifth Circuit upheld the partial closure, holding that interest in protecting the minor from emotional harm was substantial, and the trial court's order did not extend beyond "justifiable limits" because it only prevented additional persons from entering the courtroom during testimony and only affirmatively excluded one person whose presence intimidated the witness from the courtroom. *Id*. Here, the admittedly sparse record appears to indicate that the

7

trial court *sua sponte* excluded *all* members of the public during except for Appellant's parents, whose attendance at the adjudication and disposition hearings was statutorily mandated required under TEX.FAM.CODE ANN. § 51.115(a)(West 2014). As such, the closure of the courtroom was complete, and presuming that a juvenile and an adult's public trial rights are co-extant, the four-factor *Waller* test would apply.

However, even if the trial court's actions only constituted a partial closure that could be justified by a "substantial reason" under *Osborne*, or even if the statutory "good cause" standard the Texas Family Code hypothetically set the constitutional floor for a juvenile's constitutional rights, the lack of any fact-findings or some indication of why the trial court chose to close proceedings is fatal. "[T]he trial court must make sufficient findings to allow the reviewing court to determine whether the partial closure was proper" unless "we can glean sufficient support for a partial temporary closure from the record." *United States v. Farmer*, 32 F.3d 369, 371 (8th Cir. 1994); *see also Benson*, 2013 WL 1149028, at *2*-3.

The State concedes that the trial court failed to provide any reason for its actions in closing voir dire to the public. However, the State asserts that error, if any, should be reviewed for harmlessness, citing *R.A.G. v. State*, 870 S.W.2d 79, 83 (Tex.App.--Dallas 1993, writ granted), *rev'd on other grounds sub nom In the Matter of R.A.G.*, 866 S.W.2d 199 (Tex. 1993). In *R.A.G.*, the Dallas Court of Appeals upheld the trial court's decision to exclude all members of the public except the press in the face of an objection from a juvenile defendant, noting in passing that the trial court exercised wide discretion in running the courtroom and the judgment could not be reversed unless error "as reasonably calculated to cause or probably caused the rendition of an improper judgment." *R.A.G.*, 870 S.W.2d at 83. *R.A.G.* is inapposite. In that case, the appellant challenged the trial court's decision to allow the press and exclude the general

8

public under the Texas Family Code, not the United States Constitution. *R.A.G.*, 870 S.W.2d at 83. Because Appellant here alleges a constitutional public trial violation, the error is structural and no harm analysis is required. In any event, while the previous statute provided that a trial judge could exclude the public at his or her discretion, the Texas Legislature amended the statute in 1995 to provide that juvenile court trial *must* remain open unless good cause exists to close the trial. *See* Act of May 31, 1995, 74th Leg., ch. 262, § 45, 1995 TEX.GEN.LAWS 2517, 2541. It is clear that under the constitution and by statute, the juvenile proceeding must remain open unless the court has a sufficient reason to justify closing it.

Here, we are unable to determine that the rationales underpinning the trial court's decision to exclude the public from voir dire were constitutionally sound. Absent that evidence, we presume error. *See Farmer*, 32 F.3d at 371. Since violation of the public trial right is structural, we are required to reverse Appellant's conviction. *Lilly*, 365 S.W.3d at 328.

Issue One is sustained. We decline to reach Issue Two as unnecessary to the ultimate resolution of this appeal. *See* TEX.R.APP.P. 47.1. The judgment of the trial court is reversed and remanded for a new trial.


July 29, 2014

                              YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

9