

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| | | No. 08-11-00244-CV |
| | § | |
| | | Appeal from |
| IN THE MATTER OF J.A.B., | § | |
| | | 65th District Court |
| A JUVENILE | § | |
| | | of El Paso County, Texas |
| | § | |
| | | (TC # 10,01201) |
| | § | |

**O P I N I O N**

J.A.B., a juvenile, appeals from adjudication and disposition orders. A jury found that J.A.B. engaged in delinquent conduct by committing three counts of aggravated assault with a deadly weapon. After finding a disposition should be made, the jury assessed a determinate sentence of three and one-half years in the Texas Youth Commission. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

On September 4, 2010, seventeen-year-old J.R. went to Appellant's apartment to spend the night. They also planned to attend a party. Appellant drove to the party on Chester Street in her mother's dark gray 2007 Ford Focus with J.R. riding in the front passenger seat. The car was not damaged when the pair left the apartment complex. At some point during the evening, gang members began throwing gang signs. Multiple fights erupted and J.R. watched as people began

pulling out baseball bats and breaking beer bottles to use as weapons. J.R. and Appellant walked out into the front yard but saw one person stab another as people began fighting outside as well. Someone hit J.R. and she cut her foot on a broken beer bottle. J.R. became separated from Appellant but they found each other farther up the street. They decided to leave and headed for the car which was parked on Chester. Appellant climbed in the driver's seat, J.R. sat in the front passenger seat, and another girl, M.K., crawled in the back seat. They turned onto a side street and, after traveling a short distance, came upon a group of people standing in the street. Appellant began honking at them to move but only some of them did. J.R. could see a guy and a girl close to the car and she closed her eyes. She immediately heard two or three loud thumps. Appellant continued driving and turned onto Pershing. She stopped the car and M.K. jumped out and left. J.R. attempted to get out but her car door would not open. Appellant asked whether she had hit anyone and they discussed going back to the scene. But they were scared and decided to go back to Appellant's apartment instead.

When Appellant and J.R. arrived to the apartment, Appellant was unable to turn off the car. She called her mother, G.M., to come outside. G.M. was able to shut off the engine and saw that the car had been damaged. Appellant, who appeared extremely nervous, told G.M. that a car had hit them in the apartment complex. G.M. looked around the complex and then talked to Appellant again about what had happened. Appellant admitted that she "had crashed at the place where they had the party." The girls also told G.M. that they hit something but did not know what had happened. G.M. did not call the police.

Britanney DeLaRosa went to the party on Chester Street with Joanna Gianni and other friends. When people began fighting, DeLaRosa and Gianni ran outside and went to a nearby intersection. They were standing in the street when DeLaRosa saw headlights and heard a car

coming toward them. The car sounded like it was accelerating. DeLaRosa did not know what happened but she ended up on the ground. Her head hurt and she suffered injuries to her arms, the right side of her back, and her shoulder.

Claudia Navarro attended the same party and was standing at the intersection of Travis and Cumberland when she saw a car traveling between 40 and 60 mph as it approached the intersection. The vehicle did not slow down or stop at the stop sign. Navarro saw the car hit her brother-in-law, Jaime Avila. The side mirror flew off of the car when it struck Avila. Navarro also saw that Gianni had been hit by the car.

Shortly after Julian Buehler arrived at the party, he saw a group of people chasing somebody. He followed and they all ended up in the street. Joanna Gianni was standing near him. Buehler suddenly heard a car's engine and then a car hit Gianni, whose leg was broken.

Juan Chaparro attended the party with his brother, Jaime Avila. He had only been there a few minutes when people began fighting. People went outside and ended up in the intersection. Chaparro heard a car accelerating and by the time he could see it, the car was close by. The car struck Avila and DeLaRosa at the same time and then struck Gianni. The passenger side mirror came off when it struck Avila and DeLaRosa. The car did not slow down or stop and Chaparro chased it to get the license plate number. Chaparro, who is familiar with cars, described it as a dark or black Ford.

Jaime Avila recalled going outside because people were fighting at the party. While they were standing in the street near a stop sign, Avila saw headlights quickly approaching. He believed the car would stop because of the stop sign. When he realized it was not going to stop, Avila tried to pull DeLaRosa out of the way but the car hit both of them. Avila suffered injuries to his knee and head.

Joanna Gianni took the stand but she could not remember the months of September and October 2010 due to her injuries. Other evidence showed that Gianni was in a coma approximately three weeks and had multiple fractures in her right leg, pelvis, and sacrum. She also suffered a Diffuse Axonal Injury which means a shearing of the brain cells.

Officer Rudy Martinez was dispatched to the intersection of Cumberland and Travis based on a report of a fight. He found a group of people standing around two injured individuals and a third injured person approximately thirty feet from the other two.

At 3 a.m. on September 5, 2010, Officer Jorge Estrada went to the scene to process and collect evidence. Among other things, he found a side mirror from the passenger side of a vehicle and a "blinker." He did not find any skid marks in the intersection. He found a baseball bat in a driveway about 100 feet from the intersection.

Officer Jose Chairez arrived at the crime scene around 2 a.m. on September 5. He interviewed several witnesses who told him that a black compact car ran over three people at that intersection. He also spoke with Steve Macias, who had been stabbed at a party on Chester Street earlier that evening. Macias identified the person who stabbed him and Chairez arrested Ollis Brown. Chairez interviewed Brown, who provided Chairez with information about the vehicular assaults. On the evening of September 5, detectives went to the apartment complex where Appellant and her mother lived and found a dark gray 2007 Ford Focus. Officer Albert Briones photographed the vehicle. The front bumper was on the sidewalk with a red toolbox next to it. Briones observed damage to the right front fender, the right passenger side, and the right side of the vehicle. The right side mirror was missing. The vehicle was towed to a secure police building and Briones compared the right side mirror which had been placed into evidence.

He determined the mirror matched the 2007 Ford Focus. Officer Chairez also compared the mirror to the vehicle and he described it as a perfect match.

Servando Sanchez testified for the defense. Sanchez is a high school student who lives on Travis Street. Around midnight on September 5, 2010, he heard screaming and yelling outside of his house. He became concerned because he knew his father was and outside, so he went to get him. As Sanchez was helping his father inside, he heard a car hit something and saw a body fly into the air. He did not think a compact car could throw someone into the air and he believed the car was a Dodge Charger or a 300 based on the shape of its rear lights.

Fernando Garcia and his friends planned to have a small party but it grew to the point that more than 100 people were present. When one person began making trouble, they asked him to leave and a fight started outside the house. The fight moved into the street and people ran up Travis Street. Garcia was outside when he heard a big thump. saw a blue Ford Focus pulling away from the curb and it struck the car in front of it. He watched the car until he could not see it anymore and then he heard the car accelerate followed by a "big boom." He did not see the car hit anyone.

The jury found beyond a reasonable doubt that Appellant engaged in delinquent conduct for aggravated assault with a deadly weapon with regard to each of the complainants. After finding a disposition should be made, the jury assessed a determinate sentence of three and one-half years in the Texas Youth Commission.

## SUFFICIENCY OF THE EVIDENCE

In Issues One through Three, J.A.B. challenges the legal sufficiency of the evidence supporting the jury's findings that she committed aggravated assault with a deadly weapon against Joanna Gianni, Britanney DeLaRosa, and Jaime Avila. More specifically, Appellant

complains that the evidence is insufficient to prove that her vehicle struck the complainants. In effect, Appellant claims that the State failed to prove that she is the person who committed the offenses. She also challenges the sufficiency of the evidence to prove the culpable mental state.

*Standard of Review and Applicable Law*

The State is required to prove beyond a reasonable doubt that the juvenile engaged in delinquent conduct or conduct indicating a need for supervision. TEX.FAM.CODE ANN. § 54.03(f)(West Supp. 2012). Accordingly, we are required to use the *Jackson v. Virginia* standard[1] when reviewing the sufficiency of the evidence to support a finding that a juvenile engaged in delinquent conduct. *In re I.L.*, 389 S.W.3d 445, 454-55 (Tex.App.--El Paso 2012, no pet.). Under that standard, we review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010); *In re I.L.*, 389 S.W.3d at 455. As the trier of fact, the jury is the sole judge as to the weight and credibility of witness testimony, and therefore, on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 894-95. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). On appeal, we serve only to ensure the jury reached a rational verdict, and we may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). The standard of review applies to both direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 158 (Tex.Crim.App. 1991), *overruled on other grounds*, *Paulson v. State*, 28 S.W.3d 570 (Tex.Crim.App. 2000).

---

[1] *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The State's petition alleged that Appellant committed aggravated assault with a deadly weapon under Section 22.02(a)(2) of the Texas Penal Code. A person commits aggravated assault if she commits assault as defined in Section 22.01 and uses or exhibits a deadly weapon during the commission of the assault. TEX.PENAL CODE ANN. §22.02(a)(2)(West 2011). A person commits assault if she intentionally, knowingly, or recklessly causes bodily injury to another. TEX.PENAL CODE ANN. § 22.01(a)(1)(West 2011). Based on the allegations in the petition, the State was required to prove beyond a reasonable doubt that: J.A.B. intentionally, knowingly, or recklessly caused bodily injury to each complainant by striking him or her with an automobile and she used or exhibited a deadly weapon during the commission of the assault, namely, an automobile, that in the manner of its use and intended use was capable of causing death or serious bodily injury.

*Identity*

The State bears the burden of proving beyond a reasonable doubt that the accused is the person who committed the charged offense. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex.Crim.App. 1984), *overruled on other grounds by Geesa v. State*, 820 S.W.2d 154, 161 (Tex.Crim.App.1991); *Phillips v. State*, 164 Tex.Crim. 78, 297 S.W.2d 134, 135 (Tex.Crim.App. 1957). The identity of the accused may be proved by direct or circumstantial evidence. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex.Crim.App. 1986); *Martin v. State*, 246 S.W.3d 246, 261 (Tex.App.--Houston [14th Dist.] 2007, no pet.).

Taken in the light most favorable to the verdict, the evidence showed that Appellant drove a dark gray 2007 Ford Focus away from a party near the intersection of Travis and Cumberland. The passenger, J.R., said that people were in the street at that intersection and she saw that a guy and a girl were close to the car. J.R. closed her eyes and she heard two or three

loud thumps. Seconds later, J.R. was unable to open the passenger door because it was jammed and Appellant asked her whether she had hit someone. Witnesses who were in or near the intersection said that parts of the car, including the passenger side mirror, flew off of the vehicle when it hit the victims. When Officer Chairez compared the passenger side mirror to the 2007 Ford Focus driven by Appellant, he determined that it was a perfect match to the vehicle. Rather than going back to the scene or calling the police, Appellant returned home and initially lied to her mother about how the car had been damaged. Evidence of flight is indicative of a consciousness of guilt and it is a circumstance from which an inference of guilt may be drawn. *Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex.Crim.App. 2007); *Burks v. State*, 876 S.W.2d 877, 903 (Tex.Crim.App. 1994); *Valdez v. State*, 623 S.W.2d 317, 321 (Tex.Crim.App. 1979)(op. on re'g). Based on all of the foregoing evidence, the jury could rationally find beyond a reasonable doubt that Appellant is the person who drove the vehicle which struck the three victims.

*Culpable Mental State*

Appellant's challenge to the sufficiency of the evidence proving the culpable mental state requires us to determine whether this offense is result-oriented. Section 6.03 of the Penal Code provides that:

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature

and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX.PENAL CODE ANN. § 6.03 (West 2011). As can be seen from these definitions, section 6.03 delineates three conduct elements which may be involved in any offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *Hughes v. State*, 897 S.W.2d 285, 295 n.14 (Tex.Crim.App. 1994); *Cook v. State*, 884 S.W.2d 485, 487 (Tex.Crim.App. 1994); *In re I.L.*, 389 S.W.3d at 450. An offense may contain any one or more of these "conduct elements" which alone or in combination form the overall behavior which the Legislature has intended to criminalize, and it is those essential "conduct elements" to which a culpable mental state must apply. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex.Crim.App. 1989).

Under Section 22.01(a)(1), a person commits assault if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. Bodily injury assault is a result-oriented offense. *Landrian v. State*, 268 S.W.3d 532, 536 (Tex.Crim.App. 2008). Section 22.02(a) of the Penal Code defines the offense of aggravated assault as being an assault under Section 22.01, and the person:

(1) causes serious bodily injury to another, including the person's spouse, or

(2) uses or exhibits a deadly weapon during the commission of the assault.

The gravamen of the offense of aggravated assault is the specific type of assault defined in Section 22.01. *Landrian*, 268 S.W.3d at 537.

In this case, the State alleged that Appellant committed assault under Section 22.01(a)(1) by causing bodily injury and she used or exhibited a deadly weapon during the commission of the assault. Thus, the gravamen of the aggravated assault alleged here is causing body injury.

We conclude that this is a result-oriented offense. *See Dolkart v. State*, 197 S.W.3d 887, 893 (Tex.App.--Dallas 2006, pet. ref'd); *but see Johnson v. State*, 271 S.W.3d 756, 760 (Tex.App.--Waco 2008, pet. ref'd)(concluding that aggravated assault by causing bodily injury, accompanied by the use or exhibition of a deadly weapon, is a result-oriented offense which also includes a nature-of-conduct element, namely, the defendant's use or exhibition of the deadly weapon). The essential focus of a result of conduct statute is to punish the defendant for causing a specified result. *Dolkart*, 197 S.W.3d at 893.

The State was required to prove: (1) it was Appellant's conscious objective or desire to cause the result, namely, bodily injury, by striking the victims with the car, (2) she was aware that her conduct was reasonably likely to cause the result, or (3) she was aware of but consciously disregarded a substantial and unjustifiable risk that the result would occur. Intent may be inferred from circumstantial evidence such as the Appellant's acts, words, and conduct. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004); *Dominguez v. State*, 125 S.W.3d 755, 761 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd). Intent may also be inferred from the use of a deadly weapon, unless it would not be reasonable to infer that death or serious bodily injury could result from use of the weapon. *See Dominguez*, 125 S.W.3d at 761.

The Ford Focus driven by Appellant did not stop at the stop sign. To the contrary, several witnesses testified that the Ford Focus accelerated toward the group of people in the street and the vehicle was traveling above 30 miles per hour. Juan Chaparro testified that he thought the driver was trying to hit them because the car was traveling straight but then it swerved in the direction of his brother. J.R. recalled that she could see the people in the street and Appellant continued to drive toward them while honking the horn. The police officers who investigated the scene did not find any skid marks. Appellant did not slow down or stop after

striking the three victims.

Appellant contends that the jury could not have found that she acted intentionally or knowingly because J.R. testified that Appellant was honking her horn and trying to stop. She also argues that it was impossible for her to drive in excess of the speed limit due to the congestion and chaos in the street. She faults the police for failing to determine the speed the vehicle was traveling when it struck the victims. The jury was free to determine the credibility of the witnesses, resolve conflicts in the evidence, and weigh the evidence. We are not permitted to second-guess the jury's resolution of those matters and we must instead take the evidence in the light most favorable to the verdict. We also do not measure sufficiency of the evidence by considering what evidence is absent. The jury could have inferred from the evidence that Appellant had a conscious objective or desire to cause bodily injury by hitting the people with the car or she was aware that her conduct of driving the car into the group of people was reasonably likely to cause bodily injury. We therefore find that the evidence is legally sufficient to prove that Appellant committed the offense intentionally or knowingly.

With respect to the reckless mental state, the State was required to prove that Appellant was aware of but consciously disregarded a substantial and unjustifiable risk that bodily injury would occur if she struck people with the vehicle. In *Williams v. State*, 235 S.W.3d 742, 755-56 (Tex.Crim.App. 2007), the Court of Criminal Appeals held that a reviewing court must, when addressing the culpable mental state of recklessness under section 6.03(c), examine the defendant's conduct to determine whether:

(1) the alleged act or omission, viewed objectively at the time of its commission, created a 'substantial and unjustifiable' risk of the type of harm that occurred;

(2) that risk was of such a magnitude that disregard of it constituted a gross deviation from the standard of care that a reasonable person would have

- 11 -

exercised in the same situation (i.e., it involved an 'extreme degree of risk, considering the probability and magnitude of the potential harm to others');

(3) the defendant was consciously aware of that 'substantial and unjustifiable' risk at the time of the conduct; and

(4) the defendant consciously disregarded that risk.

When determining whether an act or omission involves a substantial and unjustifiable risk, we examine the events and circumstances from the viewpoint of the defendant at the time the events occurred, without viewing the matter in hindsight. *Williams*, 235 S.W.3d at 753. Mere lack of foresight, stupidity, irresponsibility, thoughtlessness, ordinary carelessness, however serious the consequences may happen to be, does not rise to the level of criminal recklessness. *Id*. at 751.

When viewed objectively, Appellant's conduct of driving an automobile into a group of people at a speed estimated by various witnesses to be in excess of 30 miles per hour created a substantial and unjustifiable risk that the victims would suffer bodily injury. Appellant's conduct caused an extreme degree of risk considering the probability and magnitude of the potential harm to others. Consequently, the disregard of this risk constituted a gross deviation from the standard of care that a reasonable person would have exercised in the same situation. Any person who undertakes to get behind the wheel of a car must be consciously aware of the risk that bodily injury will occur if the car is driven into a pedestrian. Appellant consciously disregarded that risk when she continued to drive the vehicle toward the victims and even accelerated rather than braking or stopping at the stop sign. We conclude that the evidence is legally sufficient to support a finding that Appellant acted recklessly. We overrule the first three issues.

## JURY MISCONDUCT

In her fourth issue, Appellant argues that trial court abused its discretion by refusing to grant a mistrial when a juror, during deliberations, contacted a lawyer from the defense attorney's office to inquire about the role of a jury in the judicial system. Article 36.22 provides:

> No person shall be permitted to be with a jury while it is deliberating. No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court.

TEX.CODE CRIM.PROC.ANN. art. 36.22 (West 2006). When a juror converses with an unauthorized person, injury is presumed. *Alba v. State*, 905 S.W.2d 581, 587 (Tex.Crim.App. 1995). The presumption is rebuttable if it is shown that the case was not discussed or that nothing prejudicial to the accused was said. *Id.* In such a case, the appellant has not been injured and the verdict will be upheld. *Id*. We review the denial of a motion for mistrial under an abuse of discretion standard. *Coble v. State*, 330 S.W.3d 253, 292 (Tex.Crim.App. 2010).

During the disposition hearing, Appellant's attorney, who is employed by the Public Defender's Office, advised the court that one of the jurors called another attorney in the office one night while the jury was deliberating adjudication. Wes Navidomskis testified that a man he had known for many years, Ray Sanchez, called him and told him that he was serving on a jury. Navidomskis told Sanchez that he could not talk to him and Sanchez said he understood that he could not talk about the case. Sanchez asked whether it was appropriate for some jurors to pressure others and Navidomskis replied that every juror is entitled to his or her opinion. Sanchez also said that he felt it was his job to judge the prosecution's case and he understood the defense did not have to put on any evidence. Navidomskis told him that he was right. Sanchez also discussed the burden of proof. Navidomskis concluded the conversation by telling Sanchez he would see him at a business meeting the following week.

Sanchez testified that he called Navidomskis and talked to him briefly about the role of a jury in the judicial system. Sanchez denied talking to him about the case at all. Sanchez and Navidomskis are in business together and they talked about that. The trial court denied Appellant's motion for mistrial.

The presumption of injury has been rebutted because the evidence showed that the juror and the attorney did not discuss Appellant's case and Navidomskis did not say anything prejudicial to Appellant. Under these facts, the trial court did not abuse its discretion by denying the motion for mistrial. Issue Four is overruled. Having overruled each issue presented on appeal, we affirm the judgment of the trial court.

July 24, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

- 14 -