**Opinion issued March 13, 2014**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-13-00104-CR**
_____

**RAEPHIL JOHNSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1320164**

---

**MEMORANDUM OPINION**

A jury found Appellant guilty of the offense of aggravated assault.[1]  The

trial court assessed his punishment at 20 years in prison.  In one issue, Appellant

complains of jury-charge error.

---

[1]    *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon 2011).

We affirm.

## Background

On August 30, 2011, Bryan Johnson was walking through his apartment complex when he noticed that his mother's boyfriend, Kenyatta, was engaged in an argument with a man named Shawn, who also lived in the complex. Shawn was on the second-floor balcony in front of the apartment where he lived. Appellant was also on the balcony with Shawn. Kenyatta was standing below on the ground.

Johnson stopped and inquired why Shawn and Kenyatta were arguing. Appellant stared at Johnson but did not answer him. Evidence would later show that the two men were arguing about whether Shawn owed Kenyatta money for PCP, an illegal drug.

Johnson's mother, Phyllis, who lived across the street, was walking to Johnson's apartment along with Johnson's younger sister, A.U., and Johnson's sister-in-law, Greta. As they neared Shawn's apartment, they heard the men arguing.

At that point, Appellant went into Shawn's apartment and retrieved a firearm, which witnesses later described as a rifle. Standing on the balcony, Appellant began firing the rifle. The first shot hit the railing. The second shot hit Johnson in the leg, and he fell to the ground. As he descended the stairs, Appellant continued to fire the rifle, repeatedly shooting Johnson as he lay on the ground.

2

Appellant shot Johnson five times, shooting him in the leg, back, neck, arm, and face. Phyllis, A.U., and Greta witnessed the shooting. After he shot Johnson, Appellant held the gun to Phyllis's head. She told him to either shoot or run. Appellant chose to flee the apartment complex.

Soon after, the police and an ambulance arrived. Johnson was transported to the hospital where he remained for 28 days. He underwent numerous surgeries but survived the shooting.

Appellant was arrested and charged with the offense of aggravated assault. The indictment charging Appellant read as follows: "[O]n or about August 30, 2011, [Raephil Johnson] did then and there unlawfully, intentionally and knowingly cause bodily injury to Bryan Johnson by using a deadly weapon, namely, a firearm."

At trial, the State presented the testimony of Phyllis, A.U., and Greta. Johnson also testified. Each of the State's witnesses testified that Appellant shot Johnson numerous times.

The witnesses stated that Appellant had gone into Shawn's apartment and retrieved a gun. When he came out, Appellant shot Johnson in the leg, and Johnson fell to the ground. Appellant came down the stairs and continued shooting Johnson as he lay on the ground. Phyllis, Greta, and A.U. each testified that, as he descended the stairs, Appellant was firing the gun. Phyllis stated that Appellant

3

was standing over Johnson when he shot him in the face. Each witness also testified that Johnson was unarmed at the time of the shooting.

Appellant testified in his own defense. He stated that there had been an argument between Kenyatta and Shawn regarding money and drugs. He claimed that, when he and Shawn went outside, Johnson was already standing on the ground outside the apartment. Appellant testified that Johnson had been the first one to pull out a gun. Appellant claimed that he retrieved the rifle in response to Johnson displaying his weapon first. He stated that Shawn had instructed him to get the rifle from the apartment. Appellant testified that, at the time, he believed Johnson planned to use his gun. Appellant testified that he feared being shot by Johnson. He indicated that he shot Johnson to prevent Johnson from shooting him first.

Appellant acknowledged that he shot Johnson five times. Contrary to the testimony of the State's witnesses, Appellant claimed that he shot Johnson only from the upstairs balcony. Appellant also denied putting a gun to Phyllis's head.

Appellant testified that he believed one of Johnson's brothers had picked up Johnson's gun and had taken it away before the police arrived. With respect to Johnson having a gun, Appellant claimed, "[H]e sure had one." On direct examination, Appellant emphasized that he feared for his life when he shot

4

Johnson. On cross-examination, Appellant agreed that he "intended" to shoot Johnson, and he "knew" that it would hurt Johnson.

The jury charge included instructions on the law of self-defense. Implicitly rejecting Appellant's claim of self-defense, the jury found appellant guilty of the offense of aggravated assault. Appellant choose to have the trial court assess punishment. The court sentenced Appellant to 20 years in prison. This appeal followed.

## Charge Error

In his sole issue, Appellant asserts that the trial court erred because the definition of "knowingly," found in the abstract portion of the jury charge, failed to limit the culpable mental state to the result of his conduct. Instead, the definition also included references to the nature and circumstances surrounding Appellant's conduct. On appeal, Appellant specifically complains of the nature-of-the-conduct language. Appellant did not object to the submitted jury charge on this ground in the trial court.

A trial court must instruct a jury by "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). A review of charge error involves a two-step analysis. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). We first decide whether error actually exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)

5

(citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)).  If we determine that error exists, we then analyze the error for harm.  *Id.*

Here, in the abstract portion of the submitted charge, the trial court correctly defined the offense of aggravated assault, as charged in this case.  In this regard, the trial court instructed the jury: "A person commits the offense of assault if the person intentionally or knowingly causes bodily injury to another."  *See* TEX. PENAL CODE ANN. § 22.01 (Vernon Supp. 2013).  The court further instructed the jury: "A person commits the offense of aggravated assault if the person commits assault, as hereinbefore defined, and the person uses or exhibits a deadly weapon during the commission of the assault."  *See* TEX. PENAL CODE ANN. § 22.02(a) (Vernon 2011).

Section 6.03 of the Penal Code "delineates three 'conduct elements' which may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct."  *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994); *see* TEX. PENAL CODE ANN. § 6.03 (Vernon 2011).  The culpable mental state definitions in a charge must be tailored to the conduct elements of the offense.  *Cook*, 884 S.W.2d at 487.  "It is error for a trial judge to not limit the definitions of the culpable mental states as they relate to the conduct elements involved in the particular offense."  *Id.* at 491.

6

Under Penal Code section 22.01(a)(1), a person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1). As charged in this case, a person commits aggravated assault under Penal Code section 22.02(a)(2) if he commits assault by causing bodily injury, and the person "uses or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE ANN. § 22.02(a)(2). Arguably, under section 22.02(a)(2), the gravamen of the aggravated assault is causing body injury, thus making it a result-oriented offense. *See In re J.A.B.*, No. 08–11–00244–CV, 2013 WL 3943087, at *5 (Tex. App.—El Paso July 24, 2013, no pet.) (holding that section 22.02(a)(2) aggravated assault is a result-oriented offense). However, at least one court has characterized aggravated assault by causing bodily injury, accompanied by the use or exhibition of a deadly weapon, as a result-oriented offense that also includes a nature-of-conduct element, namely, the defendant's use or exhibition of the deadly weapon. *See Johnson v. State*, 271 S.W.3d 756, 761 (Tex. App.—Waco 2008, pet. ref'd).

Here, the abstract portion of the charge included the following instructions and definitions regarding "intentionally" and "knowingly":

> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.
>
> A person acts knowingly, or with knowledge, *with respect to the nature of his conduct or to circumstances surrounding his conduct*

7

> when he is aware of the *nature of his conduct* or that the *circumstances exist*. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

(Emphasis added.)

The trial court's definition of intentionally was limited to the result of the conduct. In contrast, the trial court's definition of knowingly was not limited to the result of the conduct. Instead, the definition of knowingly also included language regarding the nature of the conduct and language regarding the circumstances surrounding the conduct. Thus, regardless of whether the offense of aggravated assault by causing bodily injury accompanied by use of a deadly weapon is simply a result-oriented offense or is a result-oriented offense that also includes a nature-of-conduct element, the inclusion of the circumstances-surrounding-the-conduct language was improper.

The Court of Criminal Appeals has made clear that "[i]t is error for a trial judge to not limit the definitions of the culpable mental states as they relate to the conduct elements involved in the particular offense." *Cook*, 884 S.W.2d at 491. Accordingly, the trial court erred when it included circumstances-surrounding-the-conduct language in the definition of knowingly in the abstract portion of the jury charge. And, even if we presume that it was error to include the nature-of-the-conduct language, as Appellant asserts, we conclude that Appellant was not harmed by the inclusion of such language, as discussed infra.

When, as here, a defendant does not object, or states that he has no objection to a jury charge, an error will not result in reversal unless the record shows "egregious harm" such that the defendant was denied a fair trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Egregious harm exists when the record shows that a defendant has suffered actual, rather than merely theoretical, harm from jury-charge error. *Almanza*, 686 S.W.2d at 174. To meet this standard, the error must be so harmful it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). We consider the four factors identified in *Almanza*: (1) the entire jury charge, (2) the state of the evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171; *see also Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).

The first *Almanza* factor requires consideration of the entire jury charge. *See Almanza*, 686 S.W.2d at 171. In considering the charge as a whole, we "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge." *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994). Here, the application portion of the jury charge read as follows:

9

Now, if you find from the evidence beyond a reasonable doubt that on or about the 30th day of August, 2011, in Harris County, Texas, the defendant, Raephil Johnson, did then and there unlawfully, intentionally or knowingly cause bodily injury to Bryan Johnson by using a deadly weapon, namely, a firearm, then you will find the defendant guilty of aggravated assault, as charged in the indictment.

The trial court instructed the jury to find appellant guilty only if it found that he intentionally or knowingly caused the result, that is, caused bodily injury. As worded, the application paragraph directed the jury to the appropriate portion of the definitions of intentionally and knowingly. *See Hughes*, 897 S.W.2d at 296. Ultimately, we presume the jury followed the instruction in the charge. *See Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996).

We also note that Texas courts have recognized that error in the abstract portion of the jury charge did not result in egregious harm to a defendant when the application paragraph had correctly instructed the jury on the law applicable to the case. *See, e.g., Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *Kuhn v. State*, 393 S.W.3d 519, 529–30 (Tex. App.—Austin 2013, pet. ref'd); *but see Dougherty v. State*, No. PD–1411–05, 2006 WL 475802 at *1 (Tex. Crim. App. March 1, 2006) (not designated for publication) (holding that, although appellate court correctly set forth the standard of review for assessing harm, a harm analysis based on charge error could not be based only on the jury charge, and must include consideration of all four *Almanza* factors).

10

In addition, as mentioned, the alternative culpable mental state of intentionally was limited, in the abstract portion of the charge, to the result of Appellant's conduct, which Appellant asserts is the appropriate culpable mental state. "The harmfulness of error in a jury charge should be measured, at least in part, against the likelihood that the jury's verdict was actually based upon an alternative theory of culpability not affected by erroneous portions of the charge." *Williams v. State*, 226 S.W.3d 611, 618 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Atkinson v. State*, 923 S.W.2d 21, 27 (Tex. Crim. App. 1996)).

Here, the evidence presented at trial was sufficient for the jury to find Appellant guilty under the intentionally culpable mental state. Based on the evidence presented, the jury could have reasonably found that Appellant intentionally caused bodily injury to Johnson by shooting him with a firearm. The evidence showed that Appellant shot Johnson five times with a rifle as he advanced toward Johnson. Moreover, Phyllis testified that, at the time Johnson was lying injured on the ground, Appellant stood over Johnson and shot him in the face.

Appellant testified that he shot Johnson five times, albeit allegedly in self-defense. Appellant never disputed that he intentionally caused Johnson bodily injury. To the contrary, as presented, it was implicit in Appellant's theory of self-defense in this case. Appellant's testimony indicated that he shot Johnson to stop him from shooting him first. In short, the evidence supported a finding that

Appellant intentionally caused Johnson bodily injury. Thus, with respect to the element of causing bodily injury, the jury was presented with an alternate theory of culpability, supported by sufficient evidence, on which it could have found Appellant guilty. We conclude that the charge as a whole does not weigh in favor of a finding of egregious harm.

We next turn to the second *Almanza* factor: the state of the evidence. Appellant's defense at trial was that he acted in self-defense. Appellant admitted to shooting Johnson five times, and he admitted that he knew that shooting Johnson would hurt him. He never disputed that the firearm he used was a deadly weapon. *See Anderson v. State*, 11 S.W.3d 369, 372 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ("To raise the issue of self-defense, appellant must admit the committed offense and then offer self-defense as justification."). To the contrary, Appellant indicated that he shot Johnson to stop him from shooting first. Appellant never claimed that he did not intentionally or knowingly cause Johnson bodily injury. In fact, his testimony showed that he intended to cause injury to Johnson to stop Johnson from shooting first. Appellant admitted that he knew shooting Johnson would hurt Johnson. Appellant never indicated that he lacked the requisite culpable mental state to commit the charged offense, nor did any evidence raise this inference.

Self-defense aside, the State's evidence also showed Appellant knowingly and intentionally caused Appellant bodily injury. The evidence showed that Appellant continued to shoot Johnson four more times after he was shot in the leg and was lying on the ground. The evidence also showed that Appellant was advancing toward Johnson as he shot him. Johnson's mother testified that Appellant shot Johnson in the face as he stood over him. The State also presented testimony from a police officer establishing that Johnson was shot with a firearm and that a firearm is a deadly weapon. After reviewing the evidence, we conclude that the second *Almanza* factor does not indicate that Appellant was egregiously harmed by the charge error.

With regard to the third *Almanza* factor—arguments of counsel—the State briefly mentioned that Appellant had admitted to shooting Johnson and causing him bodily injury. However, the State did not highlight or rely on the erroneous instruction. Instead, both side's argument focused on whether Appellant was justified in shooting Johnson based on the theory of self-defense. The primary point of contention was whether Johnson had a gun at the time of the incident. In sum, we perceive nothing in the closing arguments to indicate that Appellant was egregiously harmed by the charge error.

Finally, with regard to the final *Almanza* factor, Appellant has not pointed to any other relevant information, nor are we aware of any information that should be

13

considered in analyzing any potential harm. Thus, in light of the *Almanza* factors, we conclude that Appellant did not suffer egregious harm as a result of the charge error.

After reviewing the record and considering the *Almanza* factors, we hold that the trial court's error in the abstract portion of the jury charge, with respect to its definition of "knowingly," did not cause Appellant to suffer egregious harm. We overrule Appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish.   TEX. R. APP. P. 47.2(b).

14