**HOUSTON CHRONICLE PUBLISHING COMPANY; Kevin Moran; The Dallas Morning News, Inc.; Galveston Newspapers, Inc.; and Scott Parks, Relators,**

v.

**The Honorable Mary Nell CRAPITTO, Judge, County Court at Law No. One Galveston County, Texas, Respondent.**

No. 14–95–00311–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 21, 1995.

Paul Walter, Dallas, Stephen R. Lewis, Jr., Galveston, David H. Donaldson, Jr., & Peter Drew Kennedy, Austin, Charles A. Daughtry, Joel R. White, Houston, for relators.

Joseph D. Jamail, Houston, Barry C. Wiley, Texas City, for respondent.

Before AMIDEI, ANDERSON and EDELMAN, JJ.

## OPINION

AMIDEI, Justice.

In this original proceeding, Houston Chronicle Publishing ("the Chronicle"); Kevin Moran ("Moran"); The Dallas Morning News, Inc. ("the Dallas Morning News"); Galveston Newspapers, Inc. ("Galveston Newspapers"); and Scott Parks ("Parks"), relators, urge this court to find that respondent, the Honorable Mary Nell Crapitto, Judge of the County Court at Law No. One, abused her discretion by excluding the news media from the voir dire proceedings in trial court cause number 146705, styled *State of Texas v. John Overstreet,* and trial court cause number 146707, styled *State of Texas v. Greg Trantham.* We hold that respondent abused her discretion by excluding the press from the voir dire proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 20, 1995, the cases of *State v. Overstreet* and *State v. Trantham* were called for trial. These cases, which were tried together, involved allegations that the defendants, who were police officers, used a stray dog for target practice. The case attracted considerable media attention. On the day the case began, several members of

the news media, including reporters for the Chronicle, the Dallas Morning News, Fox Television, KTRK T.V., and the now defunct Houston Post, were in the courtroom to attend voir dire. Before voir dire began, respondent called Moran, a reporter for the Chronicle, into her chambers and advised him that she intended to exclude the news media from the voir dire proceedings because she did not want the jury to be intimidated by their presence. Respondent indicated that the media would be allowed to attend the remainder of the trial. Moran orally objected to the exclusion, filed a written objection, and asked for a continuance so that a hearing could be conducted on the issue. His written objections and requests were delivered to the court coordinator who in turn gave them to respondent. Respondent denied Moran's requests.

After the jury panel was brought into the courtroom, respondent asked all members of the media to identify themselves. After the reporters identified themselves, respondent ordered them to leave. In explaining her decision, respondent stated that she believed the jury panel would be more candid during voir dire if the members of the press were not in the courtroom. Before leaving, Parks, a reporter for the Dallas Morning News, introduced himself and asked respondent to allow the record to reflect that he objected to the exclusion based on the First Amendment. Respondent agreed to allow the record to reflect his presence and objection. She then ordered him out of the courtroom.

In addition to ordering the press out of the courtroom, respondent also excluded one other member of the public. This man, identified only as an "interested party" was asked to leave based on respondent's "concern" for the jurors. The only other members of the public allowed to remain were members of the defendants' family.

After the exclusion of the media and the one "interested" member of the public, relators filed a motion for leave to file petition for writ of mandamus with this court. Before this court was able to issue any rulings on the motion, the voir dire proceedings ended. Thus, respondent claimed that we should not grant leave to file because the issue was moot. In spite of respondent's contention, we granted the motion for leave to file petition for writ of mandamus, and set the case for oral argument.

■■■ We will deal with the mootness issue first because this argument was raised by respondent before we granted leave to file, and respondent still contends that this case is not proper for mandamus review because it is moot. The mootness doctrine limits courts to deciding cases in which an actual controversy exists. *FDIC v. Nueces County*, 886 S.W.2d 766, 767 (Tex.1994). Although we agree that the immediate controversy became moot once the voir dire proceedings ended, we address the merits of the claim raised by relators because it falls within the category of cases which are an exception to the mootness doctrine: those capable of repetition yet evading review.[1] *See, e.g., Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). This exception applies where the challenged act is of such short duration that the party seeking review cannot obtain it before the issue becomes moot. *Click v. Tyra*, 867 S.W.2d 406, 408 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding). In addition, there must be a reasonable expectation that the same complaining party would be subjected to the same action again. *Id.*

■■■ First, voir dire proceedings often take place very quickly, as they did in this case. So quickly in fact, that it would often be impossible to file a motion for leave to file petition for writ of mandamus and get a ruling before the voir dire proceedings were complete. *See Globe Newspaper Co. v. Superior Court of Mass., Norfolk, County*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (stating that criminal trials are typical-

---

1. Another exception to the mootness doctrine is the collateral consequences exception. *General Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex.1990). This exception has been applied when Texas courts have recognized that prejudicial events have occurred "whose effects contin-

ued to stigmatize helpless or hated individuals long after the unconstitutional judgment had ceased to operate." *Id.* (quoting *Spring Branch Indep. School Dist. v. Reynolds*, 764 S.W.2d 16, 18 (Tex.App.—Houston [1st Dist.] 1988, no writ)).

ly of short duration and that orders in such trials will likely evade considered review). Second, given the respondent's declaration that she was entitled to exclude the media from voir dire, we find this matter is capable of repetition. Thus, we conclude that this matter meets the requirements of the "capable of repetition yet evading review" exception to the mootness doctrine, and turn to the merits.

## STANDARD OF REVIEW

Mandamus is an extraordinary remedy available only in limited circumstances. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). In a mandamus proceeding, the court must determine whether: (1) the relator has an adequate remedy by appeal; and (2) the trial court abused its discretion in entering the order of which relator complains. *Plaza Court, Ltd. v. West*, 879 S.W.2d 271, 275 (Tex.App.—Houston [14th Dist.] 1994, orig. proceeding). The relator bears the burden of showing an abuse of discretion as well as the inadequacy of any remedy by appeal. *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex. 1994).

A trial court abuses its discretion if it reaches a decision "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker*, 827 S.W.2d at 839 (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)). In other words, a trial court abuses its discretion if it acts without reference to any guiding principles of law. *Plaza Court*, 879 S.W.2d at 275 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985)). While a determination of factual matters is left to the sound discretion of the trial court, an appellate court's review

of a trial court's legal analysis or its application of the law to the facts is much less deferential. *Walker*, 827 S.W.2d at 840. A trial court's failure to analyze the law properly or to apply it properly to the facts is an abuse of discretion. *Id.*

### 1. Adequacy of Appeal.

The general rule is that a remedy by appeal is available only to parties of record. *Continental Casualty Co. v. Huizar*, 740 S.W.2d 429, 430 (Tex.1987); *Central Mut. Ins. Co. v. Dunker*, 799 S.W.2d 334, 336 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (citing *Gunn v. Cavanaugh*, 391 S.W.2d 723, 724 (Tex.1965)); *Mercure Co., N.V. v. Rowland*, 715 S.W.2d 677, 680 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Obviously, in this case, relators were not parties to the state's prosecution of Overstreet and Trantham, and therefore, cannot bring an appeal to challenge respondent's decision to exclude the media from voir dire.[2] Therefore, relators have no adequate remedy by appeal, and mandamus is the proper procedure to bring this complaint before the appellate court. *See also Houston Chronicle Publishing Co. v. Dean*, 792 S.W.2d 273, 274 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding).

### 2. Abuse of Discretion.

We must now determine whether respondent abused her discretion by excluding the media from the voir dire proceedings. Relators complain that respondent's actions are unconstitutional in that they abridge the right of access guaranteed to relators by: (1) the First Amendment of the United States Constitution; (2) article I, sections 8 and 10 of the Texas Constitution; (3) article I, section 13 of the Texas Constitution; and (4)

**2.** There are exceptions to the general rule that only parties of record may appeal; however, none of these exceptions apply to relators in this proceeding. In limited instances, some special status is conferred on a person or entity not a party to the suit. *See, e.g., Jernigan v. Jernigan*, 677 S.W.2d 137 (Tex.App.—Dallas 1984, no writ) (holding that beneficiaries not named as parties entitled to appeal when trust assets were invaded and beneficiaries interest was reflected in the record); *California and Hawaiian Sugar Co. v. Bunge Corp.*, 593 S.W.2d 739 (Tex.Civ.App.—

Houston [1st Dist.] 1979, writ ref'd n.r.e.) (recognizing three exceptions to general rule: class actions, will contests, and parties who come under the doctrine of virtual representation); *Specia v. Specia*, 292 S.W.2d 818 (Tex.Civ.App.—San Antonio 1956, writ ref'd n.r.e.) (nonparty to will contest permitted right to appeal pursuant to former Texas Rule of Civil Procedure 359, now Texas Rule of Appellate Procedure 45). None of these exceptions apply to relators in this proceeding.

article 1.24 of the Texas Code of Criminal Procedure.

The United States Supreme Court has addressed the issue of the public's and the media's right to attend criminal trials in numerous cases. *E.g.*, *Press–Enterprise Co. v. Superior Court of Cal., Riverside County*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (preliminary hearings); *Press–Enterprise Co. v. Superior Court of Cal., Riverside County*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (voir dire) [hereinafter *Press–Enterprise I* ]; *Globe Newspaper Co. v. Superior Court of Mass., Norfolk County*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (testimony of minor victim of sex crime); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (murder trial). In *Richmond Newspapers*, the Court firmly established for the first time that the press and general public have a constitutional right of access to criminal trials. *Globe Newspaper*, 457 U.S. at 603, 102 S.Ct. at 2618.

In *Richmond Newspapers*, the Court conducted an extensive historical review concerning the openness of trials. 448 U.S. at 564–73, 100 S.Ct. at 2820–25. From this review, the Court stated that it was bound to conclude that "a presumption of openness inheres in the very nature of a criminal trial under our system of justice." *Id.* at 573, 100 S.Ct. at 2825. Though the state of Virginia claimed that neither the Constitution nor the Bill of Rights contains any provision which, by its terms, guarantees the public the right to attend criminal trials, seven Justices recognized that the right of access is embodied in the First Amendment, and that right is applied to the states through the Fourteenth Amendment. *Globe Newspaper*, 457 U.S. at 603, 102 S.Ct. at 2618 (citing *Richmond Newspapers*, 448 U.S. at 558–81, 100 S.Ct. at 2818–29). The First Amendment, in conjunction with the Fourteenth, prohibits the government from "abridging the freedom of speech, or of the press." *Richmond Newspapers*, 448 U.S. at 575, 100 S.Ct. at 2826. These freedoms are expressly guaranteed and share a common purpose of assuring freedom of communication. *Id.* The Court stated that it would be difficult to find any aspect of government of higher importance to the public than the manner in which criminal trials are conducted. *Id.* The Court concluded that the right of access to criminal trials may be seen as assured by the "amalgam of the First Amendment guarantees of speech and press." *Id.* at 577, 100 S.Ct. at 2827. The Court held that the right to attend criminal trials is implicit in the guarantees of the First Amendment and that without such freedom, important aspects of speech and "of the press could be eviscerated." *Id.* at 580, 100 S.Ct. at 2829 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626 (1972)).

In the cases following *Richmond Newspapers*, the Court continued to recognize and began to define the First Amendment right of public access to attend criminal trials and pretrial proceedings. The Court specifically addressed the public's and the media's right to attend voir dire proceedings in *Press–Enterprise I*. In that case, Albert Greenwood Brown, Jr. was tried, convicted, and sentenced to death for the rape and murder of a teenage girl. *Press–Enterprise I*, 464 U.S. at 503, 104 S.Ct. at 820. Before voir dire began, Press–Enterprise moved that the voir dire proceedings be open to the public and the press. The state opposed the motion and argued **"that if the press were present, juror responses would lack the candor necessary to assure a fair trial."** *Id.* (emphasis added) The trial court agreed and allowed the media to attend only the general voir dire; excluding the media from the individual voir dire. The voir dire lasted approximately six weeks and all but approximately three days were closed to the public.

After the jury was empaneled, Press–Enterprise moved the court to release a transcript of the individual voir dire; the court, however, denied the motion. *Id.* at 503–04, 104 S.Ct. at 820–21. After Brown's conviction, Press–Enterprise again applied for release of the transcript; again, the motion was denied. *Id.* at 504, 104 S.Ct. at 821. Press–Enterprise sought a writ of mandate in the California Court of Appeals to compel the trial court to release the transcript and vacate the order closing the voir dire proceedings. *Id.* at 504–05, 104 S.Ct. at 821–22.

Both the appellate court and the California Supreme Court denied the petition for writ of mandate; the United States Supreme Court granted certiorari. *Press–Enterprise Co. v. Superior Court of Cal., Riverside County,* 459 U.S. 1169, 103 S.Ct. 813, 74 L.Ed.2d 1012 (1983).

The Court began by stating that the process of juror selection is important not only to the adversaries, but to the criminal justice system. *Press–Enterprise I,* 464 U.S. at 505, 104 S.Ct. at 821. The Court, much as it had in *Richmond Newspapers,* reviewed the historical evidence and found that it revealed that "since the development of trial by jury, the process of selection of jurors has presumptively been a public process with exceptions only for good cause shown." *Id.*

The Court then stated that the issue of how to allocate the "right" to openness as between the accused and the public was unimportant because while no right ranks higher than an accused's right to a fair trial, this right is difficult to separate from the right of every man and woman to attend the voir dire which promotes fairness. *Id.* at 508, 104 S.Ct. at 823. The value of openness lies in the fact that those who do not actually attend a criminal trial can have confidence that the standards of fairness are observed because others have the right to attend. *Id.* The knowledge that anyone is free to attend assures that procedures are followed and that any deviations will be observed and reported. *Id.* The fact that the media, which reports to society at large, is also guaranteed a right of access further promotes confidence in our system of justice.

Following its discussion of the importance of openness in criminal proceedings, the Court reiterated the test stated two years earlier in *Globe Newspaper:*

[T]he circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one. Where ... the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.

*Id.* at 509–10, 104 S.Ct. at 824 (quoting *Globe Newspaper Co. v. Superior Court of Mass., Norfolk County,* 457 U.S. 596, 606–07, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982)).

Thus, according to the mandates of the United States Supreme Court, the presumption of openness may be overcome only by an "overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press–Enterprise I,* 464 U.S. at 510, 104 S.Ct. at 824. Further, the interest to be served must be articulated along with findings that are sufficiently specific to allow a reviewing court to determine whether the order excluding the public and the media was proper. *Id.*

This test comports with the Court's holding that while closed proceedings are not absolutely prohibited, they "must be rare and only for cause shown that outweighs the value of openness." *Press–Enterprise I,* 464 U.S. at 509, 104 S.Ct. at 823. The Court noted that in some limited circumstances, a limitation on the right to access may be warranted. *Id.* at 510 n. 10, 104 S.Ct. at 825 n. 10. However, the control exerted by a trial court must not deny or unwarrantedly abridge the communication of thought and the discussion of public questions always associated with public places. *Id.*

Applying the test to the facts of the case before it, the Court found that the trial court had articulated two interests in support of its order: the right of the defendant to a fair trial, and the right to privacy of the prospective jurors.[3] *Id.* at 510, 104 S.Ct. at 825.

---

3. In his concurring opinion, Justice Blackmun was concerned that recognition of a juror's privacy "right" would unnecessarily complicate the work of the trial court when attempting to conduct voir dire. *Press–Enterprise Co. v. Superior Court of Cal., Riverside County,* 464 U.S. 501, 514, 104 S.Ct. 819, 826, 78 L.Ed.2d 629 (1984) (Blackmun, J., concurring). Justice Blackmun wrote separately to note that it should not be assumed that a juror has a constitutional right of privacy without carefully considering the implications of that assumption. *Id.* Further, he noted that recognition of such a right was not necessary to the decision of the case because there was no juror before the Court seeking to vindicate any such right. *Id.* Justice Blackmun

The Court held that the result reached by the California appellate courts, that these interests were sufficient to warrant prolonged closure, was not supported by findings showing that an open proceeding in fact threatened those interests; thus, the Court found it was impossible to conclude that the closure was appropriate. *Id.* at 510–11, 104 S.Ct. at 824–25. Further, the court held that even if the trial court's findings had been sufficient to support the closure order, the court failed to consider whether alternatives were available to protect the interest of the prospective jurors that the closure order allegedly sought to protect. *Id.* at 511, 104 S.Ct. at 824. The Court held that a trial court must consider alternatives to closure or exclusion or it cannot constitutionally close voir dire. *Id.*

■ Thus, in order to pass constitutional muster and overcome the presumption of openness, a trial court must: (1) identify an overriding or compelling interest; (2) make findings, sufficiently specific for review, that the exclusion of the public and/or media is essential to preserve higher values; and (3) consider whether alternatives to total exclusion or closure are available in order to narrowly tailor the solution to serve the identified interest or value. *See id.* at 509–511, 104 S.Ct. at 823–25.

In *Press–Enterprise I*, the Court concluded that there was a failure to articulate findings with the requisite specificity, as well as a failure to consider alternatives to closure, and based on either of these infirmities, the closure order and refusal to release the voir dire transcript violated the First Amendment of the United States Constitution. 464 U.S. at 513, 104 S.Ct. at 825.

■ We now apply the test articulated by the United Supreme Court to the facts of the proceeding before us. On the record, respondent stated:

THE COURT: Good afternoon, ladies and gentlemen. I know all of y'all [sic] have been here all morning. I hope y'all [sic] had lunch. We appreciate your patience. **This is the biggest jury panel I've ever had in this courtroom.** Or probably ever will have.

This trial that you're here on, something about the trial has been on [sic] the media quite a bit, and I imagine a number of y'all [sic] have seen something about this lately.

All those in the back, are you all reporters? Okay.

If you are a reporter or if you're with the media, for purposes of voir dire only, **my sole concern is the jurors' interests and their comfort and their ability to be candid with these attorneys.** So I'm going to exclude all of the media for purposes of voir dire only. (emphasis added).

Thus, the interests to be protected as identified by the trial court were: (1) comfort of the jury panel based on crowded courtroom conditions; and (2) the ability of the jury panel to be candid with the attorneys. Respondent claims that this passage in the record contains specific findings detailing her concerns. We disagree. All this portion of the record shows is that respondent was interested in the comfort and candor of the jury panel. This is merely an articulation of the interest sought to be protected. *See Press–Enterprise I,* 464 U.S. at 510, 104 S.Ct. at 824. This is not an articulation of specific findings sufficient to allow this reviewing court to determine whether the exclusion was proper. Respondent contends that the courtroom was overcrowded and the air conditioner was not functioning properly.[4] Respondent claims that the difficult conditions were apparent to all; however, they are not apparent from the record. There are no findings in the record to suggest that the media or the "interested party" were in any way impacting the comfort of the jury panel.

noted that a trial court could consider the privacy interest of a juror in determining whether closure is warranted during voir dire, but he put off the consideration of whether and under what conditions that interest rises to the level of a constitutional right. *Id.* at 516, 104 S.Ct. at 827.

4. We note here that we are giving respondent the benefit of the doubt concerning the malfunctioning air conditioning. She never once suggested on the record that there was a problem with the air conditioner. Further, there is nothing specific in the record concerning the impact it had on the panel, if any.

There are no findings **in the record** to show how the exclusion of a few members of the media and the one member of the public would ensure the comfort of the panel, assuming they were even in discomfort.

Respondent also claims that her order was appropriate because she was trying to keep a proper level of decorum; however, there is nothing in the record to suggest that those excluded from the voir dire proceedings were disruptive, disrespectful, or otherwise unmannerly in their behavior in the back of the courtroom.

Respondent also claims that she was concerned about the ability of the panel to be candid with the attorneys. This was apparently based on the fact that the criminal case had received a great deal of media attention. There is nothing in the record to suggest that the issue of candor was raised by anyone other than respondent, or what prompted the court to believe that the potential jurors' candor would be affected by the presence of the media or the general public. That candor might also have been affected by the presence of members of the defendants' family; yet they were not ordered to leave. The mere statement that respondent was concerned about the candor of the panel is not the type of specific finding the Supreme Court envisioned in *Press–Enterprise I.*

We hold that respondent abused her discretion because she failed to sufficiently articulate findings with the required specificity, and thus, her order excluding the media violated the First Amendment of the United States Constitution.[5]

■■■■ Even if the mere articulation of the interest to be protected was sufficient, respondent's order is still unconstitutional. In addition to articulating specific findings, a trial court must consider whether alternatives were available to protect the interests of the prospective jurors that the exclusion order sought to guard. *Id.* at 511, 104 S.Ct. at 824. If the court does not consider alternatives to exclusion or closure, the court cannot constitutionally close voir dire. *Id.*

Respondent claims that the exclusion of the media and the one member of the general public in attendance was a "narrowly tailored remedy to alleviate crowded, uncomfortable courtroom conditions." However, there is nothing in the record to suggest that respondent considered alternatives to the complete exclusion of the media such as: (1) taking a recess to have repairs made to the air conditioner; (2) determining if another larger, better air conditioned courtroom was available; (3) using fans to alleviate the allegedly "uncomfortable" courtroom; (4) bringing chairs in for those who were ultimately excluded; or (5) permitting one or two members of the media to remain on the condition that they share their information with the others. The list of possible alternatives is long, yet the record contains nothing to indicate that any alternative was considered by respondent. The failure to consider alternatives makes the exclusion order constitutionally infirm. *Id.* at 513, 104 S.Ct. at 825. We hold that respondent abused her discretion by failing to consider alternative methods to protect the interests she identified.

■■■■ Relators not only claim that respondent's exclusion order violated the First Amendment of the United States Constitution, they also claim that it violates article I, sections 8 and 10 of the Texas Constitution. However, because we have determined that respondent's actions are constitutionally infirm under the United States Constitution, it is unnecessary to review relator's contentions based on the Texas Constitution. "[S]tate constitutions cannot subtract from the rights guaranteed by the United States Constitution, but they can provide additional rights to their citizens." *Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App.1991). The decisions of the United States Supreme Court represent the minimum protections which a state must afford its citizens. *Id.* "The federal constitution sets the floor for individual rights; state constitutions establish the ceiling." *Id.* (quoting *LeCroy v. Hanlon,* 713 S.W.2d 335, 338 (Tex.1986)).

---

**5.** Though none of the authorities cited by this court have specifically addressed the issue of evidentiary support for the trial court's findings, the logical conclusion is that the trial court's findings should not only be articulated, but supported by evidence in the record.

Likewise, it is unnecessary to review relators' contention that respondent's exclusion order violated article 1.24 of the Texas Code of Criminal Procedure which states that "[t]he proceedings and trials in all courts shall be public." TEX.CODE CRIM.PROC.ANN. art. 1.24.

We hold that respondent abused her discretion in excluding the media and the public from the voir dire proceedings. Respondent's order excluding the media and the "interested party" from voir dire violated the First Amendment of the United States Constitution. No writ of mandamus will issue in this case because the criminal proceedings in which the trial court's action occurred have concluded.