

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00144-CV

IN RE FORT WORTH STAR-
TELEGRAM; DALLAS MORNING
NEWS; CBS STATIONS GROUP
OF TEXAS LLC; KXAS-TV; NW
COMMUNICATIONS OF TEXAS,
INC., ON BEHALF OF STATION
KDFW FOX 4; AND WFAA-TV, INC.

RELATORS

----------

ORIGINAL PROCEEDING
TRIAL COURT NO. 323-98857J-13

----------

## OPINION

----------

### I. INTRODUCTION

In the underlying case involving juvenile R.J.D., Respondent, the Honorable Jean Boyd, *sua sponte* ordered the courtroom closed to the public and to members of the media during R.J.D.'s certification hearing and during the setting for R.J.D.'s determinate sentence trial. Relators Fort Worth Star-

Telegram; Dallas Morning News; CBS Stations Group of Texas LLC; KXAS-TV; NW Communications of Texas, Inc., on behalf of KDFW Fox 4; and WFAA-TV, Inc. assert that Respondent abused her discretion by closing the courtroom, by excluding Relators from the courtroom during these proceedings, and also by subsequently denying Relators' motion for access to the reporter's records generated at these proceedings. For the reasons set forth below, we will conditionally grant a writ of mandamus ordering Respondent to vacate her orders closing the courtroom; to set aside her March 20, 2014 order denying Relators' motion to vacate the closure orders; and to take immediate steps to make transcripts of these proceedings available to Relators upon payment and making proper arrangements.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The State alleged that R.J.D. had committed the primary offense of capital murder and sought to have him certified to stand trial as an adult. The certification hearing was held on January 10, 2014; R.J.D. had turned seventeen years old in December 2013. R.J.D. had been in detention an unusually long time based on the unavailability of his attorney due to medical conditions. Consequently, the trial on R.J.D.'s determinate sentence was scheduled for January 22, 2014, just twelve days after the certification hearing. In light of this fact, Respondent stated that she was finding good cause to close the courtroom on January 10 to avoid tainting the jury pool and ordered all members of the public and the media to leave the courtroom prior to commencement of the

certification hearing. R.J.D. did not seek the courtroom closure, and the State opposed it.

Respondent declined to waive her exclusive jurisdiction by certifying R.J.D. to stand trial as an adult, and the State and R.J.D. subsequently reached a plea agreement. They planned to present the agreement to Respondent at R.J.D.'s determinate sentence trial setting scheduled for January 22, 2014. Prior to this setting, the State—in consultation with the victim's family—and the defense attorneys agreed to omit from the stipulation of evidence certain facts regarding the sexual relationship between R.J.D. and the victim. On January 22, Respondent again ordered the courtroom closed to the public and to members of the media. R.J.D. did not seek the courtroom closure, and the State opposed it. Respondent accepted the parties' plea agreement, and the case concluded.

Relators later filed a motion with Respondent seeking access to the reporter's records from the January 10 and the January 22 proceedings and requesting that Respondent vacate her courtroom closure orders.[1] Relators' motion urged Respondent to make available to any member of the public, upon request, copies of the transcripts of the January 10 and the January 22 proceedings. After a hearing, Respondent denied the motion.

---

[1]Relators concede that Respondent did not sign written courtroom closure orders. But Respondent's oral closure orders were clear and specific and were actually enforced by removing the public and the media from the courtroom on January 10 and January 22. Therefore, the lack of written orders does not preclude mandamus relief in this case. *See In re Bledsoe*, 41 S.W.3d 807, 811 (Tex. App.—Fort Worth 2001, orig. proceeding).

Relators then filed this original proceeding. Relators claim that Respondent abused her discretion by issuing the January 10 and the January 22 courtroom closure orders and by denying Relators' motion seeking access to the reporter's records from the two proceedings.[2]

### III. STANDING

The general test for standing in Texas requires that there "(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). A relator must have standing to seek mandamus relief. *See, e.g.*, *In re Baker*, 404 S.W.3d 575, 577–78 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding); *Cole v. Gabriel*, 822 S.W.2d 296, 297 (Tex. App.—Fort Worth 1991, orig. proceeding). A lack of standing may be raised at any time or by the court on its own motion. *See Tex. Ass'n of Bus.,* 852 S.W.2d at 445–

---

[2]The State filed a response to Relators' petition for writ of mandamus consistent with its position in the trial court—the State objected to the courtroom closures—and asserted that Respondent had abused her discretion in various respects by closing the courtroom. Respondent filed a response. R.J.D. filed a response and an amended response. An amicus curiae brief was tendered by a group of juvenile justice law professors contending that Respondent did not abuse her discretion. The Texas Criminal Defense Lawyers Association (TCDLA) tendered an amicus curiae brief asserting that Respondent did not abuse her discretion. The TCDLA also timely filed a motion pursuant to Texas Rule of Appellate Procedure 39.5 requesting permission to share the time for argument allotted to Real Party in Interest R.J.D. This court granted that motion. The General Counsel for the TCDLA presented argument on behalf of R.J.D. and in support of the amicus curiae brief tendered by the TCDLA. Relators and the State also tendered, and we ordered filed, postsubmission briefs. TCDLA also tendered a postsubmission amicus curiae brief.

4

46. Relators' standing is an element of our subject-matter jurisdiction. *See id.* Accordingly, we address it here.

Courts have routinely recognized that members of the press possess standing to seek relief from orders barring them from a courtroom. *See, e.g.*, *United States v. Cianfrani*, 573 F.2d 835, 845–46 (3rd Cir. 1978).[3] In *Cianfrani*, several newsgathering organizations and two named reporters alleged that the order of a district court barred them from attending a hearing and prevented them from subsequently reading a transcript of that hearing; they sought aid from the appellate court to remove the continuing effect of the district court's action, as well as to establish the illegality of such closure orders for the future. *Id.* The *Cianfrani* court explained that these allegations pleaded specific, concrete facts demonstrating that the challenged practices harmed the newsgathering organizations and the two named reporters and that they would personally benefit in a tangible way from the court's intervention. *Id.* Thus, the court held that the newsgathering organizations, as well as the two named reporters, had satisfied the standing requirements implicit in Article III of the United States Constitution and discussed in *Warth v. Seldin*: they had made an allegation of such a personal stake in the outcome of the controversy as to warrant invocation

---

[3] *See also Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. 596, 603, 102 S. Ct. 2613, 2618 (1982); *Oregonian Publ'g Co. v. U.S. Dist. Court for Dist. of Or.*, 920 F.2d 1462, 1464 (9th Cir. 1990), *cert. denied*, 501 U.S. 1210 (1991); *Courier-Journal & Louisville Times Co. v. Peers*, 747 S.W.2d 125, 126–28 (Ky. 1988).

of federal-court jurisdiction (the injury-in-fact requirement) and to justify exercise of the court's remedial powers on their behalf (the prudential concerns requirement). *Cianfrani*, 573 F.2d at 845–46 (discussing *Warth v. Seldin*, 422 U.S. 490, 498–500, 95 S. Ct. 2197, 2205–06 (1975)).

Relators here allege that Respondent issued two courtroom closure orders barring them from attending proceedings conducted in her courtroom and then later denied their motion requesting that she vacate the orders and permit them to obtain a copy of the transcripts of these two proceedings. They seek aid from this court to remove the continuing effect of Respondent's action, as well as to establish the illegality of these types of courtroom closure orders for the future. We hold that these allegations satisfy the first prong of the general test for standing in Texas, akin to the injury-in-fact federal standing requirement, that requires a party seeking relief to have a personal stake in the outcome in order for a real controversy to exist between the parties. *See Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) (recognizing that to establish standing, plaintiff must allege injury distinct from public); *see also Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *accord Warth,* 422 U.S. at 498–500, 95 S. Ct. at 2205–06; *Cianfrani*, 573 F.2d at 845–46. We next address whether Relators established the second prong of the general test for standing in Texas that required them to show that the controversy between them will be actually determined by the judicial declaration sought. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

6

## IV. THE MOOTNESS DOCTRINE

The mootness doctrine is rooted in the separation of powers doctrine in the United States and Texas constitutions, both of which prohibit courts from rendering advisory opinions. *See* U.S. Const. art. III, § 2, cl. 1; Tex. Const. art. II, § 1; *see also Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000); *Tex. Ass'n of Bus.*, 852 S.W.2d at 444. The doctrine limits courts to deciding cases in which an actual controversy exists. *FDIC v. Nueces Cnty.*, 886 S.W.2d 766, 767 (Tex. 1994); *Houston Chronicle Publ'g Co. v. Crapitto*, 907 S.W.2d 99, 101 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding). An actual controversy does not exist when a party seeks a ruling on some matter that, when rendered, would not have any practical legal effect. *See Meeker v. Tarrant Cnty. Coll. Dist.*, 317 S.W.3d 754, 759 (Tex. App.—Fort Worth 2010, pet. denied).

Here, the parties agree that no actual controversy currently exists concerning Respondent's courtroom closure orders. Relators were ordered excluded from the January 10 and the January 22 proceedings, and any ruling by this court on the propriety of Respondent's courtroom closure orders will have no practical legal effect at this point; R.J.D.'s case has concluded. Thus, the issue of whether Respondent abused her discretion by issuing the courtroom closure orders has become moot. *See, e.g.*, *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (holding inmates' claims for injunctive and declaratory relief concerning unconstitutional program run in jail were moot because inmates had been

7

released from jail); *Valley Baptist Med. Ctr.*, 33 S.W.3d at 822 (holding appeal of rule 202 presuit discovery order permitting deposition became moot when appellant produced representative for deposition).

Relators nonetheless contend that this issue falls within the capable-of-repetition-yet-evading-review exception to the mootness doctrine. "Capable of repetition yet evading review" is a rare exception to the mootness doctrine. *Tex. A & M Univ.-Kingsville v. Yarbrough*, 347 S.W.3d 289, 290–91 (Tex. 2011). To invoke this exception, a party must establish both that the challenged act is of such short duration that the issue becomes moot before review may be obtained and that a reasonable expectation exists that the same complaining party will be subjected to the same action again. *Williams*, 52 S.W.3d at 184–85; *Gen. Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990).

Here, via testimony and affidavits presented at the hearing on Relators' motion for access to the court reporter's records generated at the January 10 and the January 22 hearings, Relators established that Respondent had *sua sponte*, and without reliance on evidence in the record, issued the courtroom closure orders on January 10 and January 22;[4] that Respondent had issued courtroom closure orders under similar circumstances a few times in the past; and that the January 10 and the January 22 hearings had both concluded on the same day

---

[4]It is undisputed that no evidence supporting either of the courtroom closure orders was offered, judicially noticed, stipulated to, made mention of, or otherwise made a part of the trial court record other than the fact that R.J.D.'s determinate sentence trial was set twelve days after his certification hearing.

8

that they had started. Consequently, Relators met their burden of establishing that the challenged act—the *sua sponte* issuance of a courtroom closure order excluding Relators from the courtroom in the absence of on-the-record evidence—was, and will be in the future, of such short duration that Relators could not, or probably would not, be able to obtain review before the issue becomes moot. Relators also established that a reasonable expectation exists that they will be subject in the future to a *sua sponte* order by Respondent excluding them from the courtroom in the absence of on-the-record evidence of good cause. *See Crapitto*, 907 S.W.2d at 101–02 (holding that order excluding media from courtroom during voir dire, although moot, fell within the capable-of-repetition-yet-evading-review exception because of short duration of voir dire and likelihood of repetition based on judge's statement on record that she was entitled to exclude media from voir dire).[5] Thus, although no actual controversy currently exists concerning Respondent's courtroom closure orders, Relators met their burden of establishing that the challenged act—Respondent's *sua sponte* issuance of courtroom closure orders in the absence of evidence in the record showing good cause for the closures—is capable of repetition yet will evade review. We therefore possess jurisdiction over this original proceeding under the

---

[5]Respondent stated on the record that she disagreed with the contention of the attorney for the State that she could not close the proceedings in the absence of evidence presented on the record.

capable-of-repetition-yet-evading-review exception to the mootness doctrine embodied in the second prong of the general test for standing in Texas.

## V. STANDARDS OF REVIEW

### A. Prerequisites to Mandamus Relief

A writ of mandamus will issue to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *Walker*, 827 S.W.2d at 839–40. The relator has the burden to establish an abuse of discretion as well as the inadequacy of appeal as a remedy. *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex. 1994) (orig. proceeding), *superseded by statute on other grounds*, Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2014), *as recognized in In re AIU Ins. Co.*, 148 S.W.3d 109, 119 (Tex. 2004) (orig. proceeding).

An adequate remedy by appeal does not exist when a trial court improperly excludes the public or the press from proceedings that are to be open. *See, e.g.*, *Houston Chronicle Publ'g Co. v. Shaver*, 630 S.W.2d 927, 934 (Tex. Crim. App. 1982); *Crapitto*, 907 S.W.2d at 100–02. Because Relators are members of the media who were excluded from Respondent's courtroom on January 10 and on January 22, they have no adequate remedy by appeal. *See Shaver*, 630 S.W.2d

10

at 934; *Crapitto*, 907 S.W.2d at 100–02. Below we discuss whether Respondent's challenged action in issuing the courtroom closure orders constituted an abuse of discretion.

## B. Rules of Statutory Construction

We review issues of statutory construction de novo. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). In construing statutes, our primary objective is to give effect to the legislature's intent. *Id.* (citing *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009)). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g). Thus, we rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *Tex. Lottery Comm'n*, 325 S.W.3d at 635; *see also Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 866 (Tex. 1999) (explaining that "it is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent").

## VI. TEXAS FAMILY CODE SECTION 54.08

Texas Family Code section 54.08 is part of the Texas Juvenile Justice Code and is titled, "Public Access to Court Hearings." It provides, in pertinent part, as follows:

(a) Except as provided by this section, the court shall open hearings under this title to the public unless the court, for good cause shown, determines that the public should be excluded.

. . . .

(c) If a child is under the age of 14 at the time of the hearing, the court shall close the hearing to the public unless the court finds that the interests of the child or the interests of the public would be better served by opening the hearing to the public.

Tex. Fam. Code Ann. § 54.08(a), (c) (West 2014).

In their first three issues, Relators argue that Respondent abused her discretion in several respects by issuing the courtroom closure orders. One of Relators' contentions is that Respondent closed the courtroom without a showing of good cause, as required by section 54.08(a). Relators contend that the "for-good-cause-shown" language of section 54.08(a) requires an evidentiary hearing at which Relators and members of the public must be permitted to appear and to offer evidence and also requires Respondent to make specific findings to support the closure.[6]

## A. The January 10 Hearing

Relators assert that Respondent's reason for closing the January 10 hearing—to avoid tainting the jury pool because R.J.D.'s determinate sentence

---

[6]Relators assert that Respondent should be required to make specific findings documenting the showing of good cause that are sufficient to permit review by a court of appeals and by way of analogy cite to *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 689 (Tex. 2012) (orig. proceeding).

trial was set twelve days later—was conclusory and is not, as a matter of law, good cause for closing the courtroom.

The fear of tainting the jury pool is indeed a concern in every pretrial hearing in every high profile case, criminal or civil, including juvenile cases. *See, e.g., Skilling v. United States*, 561 U.S. 358, 378–79, 130 S. Ct. 2896, 2912–13 (2010) (recognizing that "most cases of consequence garner at least some pretrial publicity"). Juror exposure to news accounts of a crime does not alone, however, presumptively deprive the defendant of due process. *Id.* at 377–85, 130 S. Ct. at 2913–17 (distinguishing cases in which the media coverage was so pervasive that the United States Supreme Court presumed prejudice to the defendant). "Every case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits." *Id.* at 381, 130 S. Ct. at 2915 (quoting *Reynolds v. United States*, 98 U.S. 145, 155–56 (1879)). Prominence does not necessarily produce prejudice, and juror impartiality does not require juror ignorance. *Id.* at 381, 130 S. Ct. at 2914–15 (citing *Irvin v. Dowd*, 366 U.S. 717, 722–23, 81 S. Ct. 1639, 1642–43 (1961)).

The plain language of family code section 54.08(a) states that proceedings involving juveniles who are fourteen years or older "shall" be open "unless the court, for good cause shown, determines that the public should be excluded."

13

Tex. Fam. Code Ann. § 54.08(a).[7]  "Shall," when used in a statute, imposes a duty.  *See* Tex. Gov't Code Ann. § 311.016(2) (West 2013).  Thus, giving section 54.08(a) its plain meaning, it imposes a duty to open hearings to the public.  *See* Tex. Fam. Code Ann. § 54.08(a).  The limited exception to this imposed duty of openness is found in the phrase "unless the court, for good cause shown, determines that the public should be excluded."  *Id.*  The plain meaning of the phrase "for good cause shown" has been construed in other statutes to require evidence in the record establishing good cause.  *See Abron v. State*, 531 S.W.2d 643, 645 (Tex. Crim. App. 1976) (construing former code of criminal procedure article 44.08(e)—which authorized a court of appeals to permit the filing of a late notice of appeal "for good cause shown"—as requiring sufficient supportive evidence in the record), *overruled on other grounds by Johnson v. State*, 556 S.W.2d 816 (Tex. Crim. App. 1977); *Hooker v. State*, 932 S.W.2d 712, 716 (Tex. App.—Beaumont 1996, no pet.) (construing article 35.29 of the code of criminal procedure—which requires a trial court to release personal information regarding the jury to a party to the trial upon a request and a showing of good cause—as requiring sufficient supportive evidence in the record); *accord Roberts v.*

---

[7]Relators point us to the legislative history of family code section 54.08 and to prior versions of the statute as evidence of the legislature's intent in enacting the current version of the statute.  But we apply a "text-centric model" when construing statutes; we will use extrinsic aids such as legislative history only when the text is not clear.  *See Ojo v. Farmers Grp., Inc.*, 356 S.W.3d 421, 435 (Tex. 2011) (Jefferson, C.J., concurring); *Jennings v. WallBuilder Presentations, Inc. ex rel. Barton*, 378 S.W.3d 519, 528 (Tex. App.—Fort Worth 2012, pet. denied).  The text of family code section 54.08(a) is clear.

14

*Williamson*, 111 S.W.3d 113, 124 (Tex. 2003) (construing rule of civil procedure 141—which authorizes trial court, for good cause stated on the record, to adjudge costs against prevailing party—as requiring trial court's stated good cause to be specific; general fairness is not good cause).[8]  Given the duty imposed by section 54.08(a) to open hearings to the public and giving the statutorily articulated exception to this duty its plain meaning, we hold that section 54.08(a) requires some evidence in the record supportive of a good-cause finding that the public should be excluded.  In the absence of evidence in the record—stipulated facts, judicial notice taken of facts or of files, testimony, self-authenticating documents, or some other evidence—as to why and how R.J.D.'s jury pool might be tainted by the media's and the public's presence at the January 10 hearing, good cause has not been "shown" for Respondent's January 10 courtroom closure order as required by the plain language of the statute.[9]  We hold that Respondent abused her discretion by issuing the January

---

[8]*See also* Richard E. Flint, *Mandamus Review of the Granting of the Motion for New Trial:  Lost in the Thicket*, 45 St. Mary's L.J. 575, 630 n.267 (2014) (distinguishing rules of civil procedure that authorize a trial court to take action for "good cause" from rules of civil procedure that authorize a trial court to take action for "good cause shown" or other similar language).

[9]*Accord In re A.J.S.*, No. 08-12-00306-CV, 2014 WL 3732569, at *5 (Tex. App.—El Paso July 29, 2014, no pet. h.) (holding that juvenile had a Fourteenth Amendment Due Process right to an "open trial" and assuming error from courtroom closure during voir dire over juvenile's objection because no facts or fact-findings existed in record providing constitutionally sound basis for closure).

courtroom closure order in the absence of evidence supportive of a good-cause finding.

## B. The January 22 Trial Setting

Relators assert that Respondent also abused her discretion by *sua sponte* closing the January 22 proceeding. Respondent indicated that the reason she closed this proceeding was because the prosecutor had removed certain facts from the stipulation of evidence to be presented at this hearing, causing Respondent to likewise be concerned about the publication of these omitted facts. Thus, Respondent's sole stated reason in the record for *sua sponte* closing the January 22 hearing was to avoid the possible presentation of private facts that the prosecutor had decided to omit from the stipulation of evidence.

We recognize that the goals of the juvenile justice system are different from the adult criminal justice system; otherwise, a separate juvenile justice system would be unnecessary. *See* Tex. Fam. Code Ann. § 51.01 (West 2014) (setting forth the purposes of the juvenile justice code). The different goals of the juvenile justice system cause the types of privacy concerns at issue here to be more compelling in juvenile cases.[10] And we do not doubt that privacy concerns could, in some instances, justify closing a juvenile proceeding involving a juvenile who is at least fourteen years old for some period *if* the statutory requisite of

---

[10]The amicus curiae briefs tendered to this court on behalf of four law professors with expertise in Texas juvenile law and by the TCDLA detail the unique issues and concerns faced by juvenile judges like Respondent.

16

good cause is *shown* on the record. But, again, as set forth above, giving the language of family code section 54.08(a) its plain meaning, in the absence of evidence in the record—stipulated facts, judicial notice taken of facts or of files, testimony, self-authenticating documents, or some other evidence—as to why and how and the extent to which the public dissemination of these private facts would be detrimental to the juvenile or to another party, good cause has not been shown for Respondent's January 22 courtroom closure order as required by the plain language of the statute. *Accord A.J.S.*, 2014 WL 3732569, at *5. We hold that under the facts presented here, Respondent abused her discretion by issuing the January 22 courtroom closure order in the absence of evidence supportive of a good-cause finding.

### C. The Limitations of Our Holdings

Relators and the State contend that Respondent's courtroom closure orders also violate the First Amendment of the United States Constitution and the "Open Courts" provision of the Texas constitution. *See* U.S. Const. amend. I; Tex. Const. art. 1, § 13. Having determined that Respondent abused her discretion by failing to correctly apply family code section 54.08(a) in the present case, we need not address the constitutional issues raised by Relators. *See, e.g., In re Ostrofsky*, 112 S.W.3d 925, 932–33 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) ("Having found an abuse of discretion by the trial court under [Texas Family Code] section 156.006, we need not address the constitutional ground raised by relator.").

17

Relators and the State also urge us to define "good cause shown" and to articulate procedures applicable in the future to govern courtroom closure orders under section 54.08(a) in all Texas juvenile proceedings.[11] We lack jurisdiction to do so. The Texas constitution's separation of powers provision prohibits courts from issuing advisory opinions that decide abstract questions of law. *See Brown*, 53 S.W.3d at 302; *see also Coalson v. City Council of Victoria*, 610 S.W.2d 744, 747 (Tex. 1980) (explaining that courts may not give advisory opinions or decide cases upon speculative, hypothetical, or contingent situations). The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties. *Tex. Ass'n of Bus.*, 852 S.W.2d at 444. Any definition of "good cause shown" created by this court and any procedures articulated by this court as governing courtroom closures under section 54.08 would constitute the resolution of abstract questions of law that would not apply

---

[11]Relators cite to several United States Supreme Court criminal cases and to several out-of-state juvenile cases setting forth tests and procedures for courtroom closure orders that Relators contend would be appropriate here. *See e.g.*, *Presley v. Georgia*, 558 U.S. 209, 215, 130 S. Ct. 721, 725 (2010) (explaining that trial courts are required to consider alternatives to closure of criminal trials); *Richmond Newspapers, Inc. v. Va.*, 448 U.S. 555, 581, 100 S. Ct. 2814, 2829–30 (1980) (holding that, "[a]bsent an overriding interest articulated in findings, the trial of a criminal case must be open to the public"); *State ex. rel. Plain Dealer Publ'g v. Geauga Cnty. Ct. Com. Pl., Juv. Div.*, 734 N.E.2d 1214, 1218–20 (Ohio 2000) (placing burden on party seeking closure of juvenile proceeding to show three factors). As previously mentioned, Relators also contend specific good-cause findings should be required as in *United Scaffolding*, 377 S.W.3d at 689.

18

to the parties before us and would thus constitute an impermissible advisory opinion.[12]

Although we possess jurisdiction to address the narrow issue presented by the facts here—whether or not Respondent abused her discretion by issuing courtroom closure orders in the absence of any type of evidence on the record showing good cause—our jurisdiction to address this specific moot issue under the limited capable-of-repetition-yet-evading-review exception to the mootness doctrine does not extend to pronouncing definitions or to adopting procedures concerning family code section 54.08(a) that will not be binding on the parties in this case because R.J.D.'s case has concluded. That is, the complained-of action by Respondent that satisfies the capable-of-repetition prong of the exception to the mootness doctrine here is only the exact action taken by Respondent in R.J.D.'s case. We cannot speculate as to whether some other

---

[12]We likewise question whether Relators and the State possess standing to seek this relief—a definition of good cause shown and articulation of procedures governing courtroom closures under section 54.08. They have not established the first prong of the general test for standing in Texas concerning this relief; Relators and the State have suffered no actual, as opposed to merely hypothetical or generalized, grievance regarding these issues. *See Brown*, 53 S.W.3d at 302; *see also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221–22, 94 S. Ct. 2925, 2932–33 (1974) (explaining in the context of standing that "[t]he desire to obtain (sweeping relief) cannot be accepted as a substitute for compliance with the general rule that the complainant must present facts sufficient to show that his individual need requires the remedy for which he asks"). If Relators and the State lack standing to assert these issues, then we lack subject-matter jurisdiction over them on this basis as well. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 444 (recognizing standing is component of subject-matter jurisdiction).

19

type of courtroom closure action taken or courtroom closure procedure followed by Respondent in the future might or might not constitute an abuse of discretion; nor may we pontificate on the abstract application of section 54.08 to hypothetical facts that are not before us. *See Patterson v. Planned Parenthood, Inc.*, 971 S.W.2d 439, 442–43 (Tex. 1998) (explaining that "[a] case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass" and recognizing an opinion in a case that is not ripe is an advisory opinion); *accord Houston Chronicle Publ'g Co. v. Thomas*, 196 S.W.3d 396, 401 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding declaratory judgment action seeking construction of Texas Public Information Act was moot because autopsy report sought was produced and declining to construe act based on future hypothetical fact situations); *see also North Carolina v. Rice*, 404 U.S. 244, 246, 92 S. Ct. 402, 404 (1971) ("[C]ourts are without power to decide questions that cannot affect the rights of litigants in the case before them[.]").

Therefore, our holdings here are limited to concluding that Respondent abused her discretion by closing the January 10 and January 22 proceedings because no evidence was shown on the record to support any good-cause finding. A plain-language reading of family code section 54.08(a) mandates that good cause for closing a juvenile proceeding involving a juvenile who is at least fourteen years old be shown by evidence on the record.

20

## VII. THE RECORDINGS OF THE PROCEEDINGS

In their fourth issue, Relators claim that Respondent abused her discretion by failing, after R.J.D.'s case was concluded, to vacate her closure orders and to permit Relators access to the recordings made by the court reporter of the January 10 and January 22 proceedings. R.J.D. contends that the recordings are, by law, confidential pursuant to Texas Family Code sections 58.005 and 58.007. *See* Tex. Fam. Code Ann. §§ 58.005, .007 (West 2014).

Section 58.005 is titled, "Confidentiality of Records." *Id.* § 58.005. It declares confidential

> [r]ecords and files concerning a child, including personally identifiable information, and information obtained for the purpose of diagnosis, examination, evaluation, or treatment or for making a referral for treatment of a child by a public or private agency or institution providing supervision of a child by arrangement of the juvenile court or having custody of the child under order of the juvenile court.

*Id.* Section 58.007 is titled, "Physical Records or Files." *Id.* § 58.007. It provides as follows:

> (b) Except as provided by Section 54.051(d-1) and by Article 15.27, Code of Criminal Procedure, the records and files of a juvenile court, a clerk of court, a juvenile probation department, or a prosecuting attorney relating to a child who is a party to a proceeding under this title may be inspected or copied only by:
>
> . . . .
>
> (5) with leave of the juvenile court, any other person, agency, or institution having a legitimate interest in the proceeding or in the work of the court.

21

*Id.* § 58.007(b)(5).[13]  Section 54.09 of the family code is titled, "Recording of Proceedings" and requires that all judicial proceedings under chapter 54 be recorded by stenographic notes or by electronic, mechanical, or other appropriate means. *Id.* § 54.09 (West 2014).

Examining these provisions and giving the words of the provisions their plain meaning, no language exists making the recordings of the January 10 and January 22 proceedings involving R.J.D. confidential as a matter of law.  Section 58.005 makes "records and files concerning a child" that are "obtained for the purpose of diagnosis, examination, evaluation, or treatment" confidential as opposed to making recordings of judicial proceedings confidential.  *See id.* § 58.005.  Section 58.007 does limit inspection of juvenile court records, but recordings of judicial proceedings—mandated to be recorded per section 54.09— are not specifically included in the court records subject to limited inspection.  *See id.* § 58.007.  Reporter's records of juvenile disposition hearings, including

---

[13]In addition to these provisions, the Juvenile Justice Code contains numerous other provisions concerning information regarding juveniles. *See, e.g.*, Tex. Fam. Code Ann. §§ 58.001–.405 (West 2014).  Some of the statutory provisions restricting access to juvenile records appear to not apply in cases such as this one in which a determinate sentence is imposed. *Accord id.* § 58.003(b) (prohibiting juvenile court from sealing records of a juvenile who has received a determinate sentence for engaging in the delinquent conduct that violates a penal law listed in section 53.045; section 53.045 lists capital murder); *see also* Tex. Penal Code Ann. § 12.42(f) (West Supp. 2014) (providing that an adjudication by a juvenile court that a juvenile engaged in delinquent conduct constituting a felony offense for which he was committed to the Texas Juvenile Justice Department under family code section 54.04(d)(2), (d)(3), or (m), or section 54.05(f) for a determinate sentence is a final conviction for enhancement purposes).

determinate sentence trials, are routinely filed in appellate courts when a juvenile appeals his disposition order. *See id.* § 56.01(c)(1)(B) (West 2014) (authorizing juvenile to appeal disposition order), § 56.02 (providing for reporter's record in juvenile case to be prepared and included in appellate record). *See generally In re J.A.B.*, No. 08-11-00244-CV, 2013 WL 3943087, at *1–8 (Tex. App.—El Paso July 24, 2013, no pet.) (involving juvenile's appeal from adjudication and disposition orders). Appeals in juvenile cases are as in civil cases generally; no special confidentiality rules exist in the rules of appellate procedure concerning reporter's records in juvenile appeals.[14] *See* Tex. Fam. Code Ann. § 56.01(b); *In re G.C.F.*, 42 S.W.3d 194, 195–96 (Tex. App.—Fort Worth 2001, no pet.). Neither Respondent nor the amicus curiae have directed us to other statutes or rules mandating that a transcription of a juvenile proceeding is confidential as a matter of law, and we have not located any.

Finally, to construe sections 58.005 and 58.007 as making the two recordings at issue confidential when section 54.08 mandates that judicial proceedings involving a juvenile who is at least fourteen years old "shall" be open to the public "unless the court, for good cause shown, determines that the public

---

[14]The only privacy accommodation for juveniles in the rules of appellate procedure is that an appellate court is to identify a juvenile by a pseudonym instead of by the juvenile's name in its opinion in a juvenile appeal. *See* Tex. R. App. P. 9.8(c). Appellate courts are expressly prohibited from altering the original appellate record—which includes the clerk's record and the reporter's record—in juvenile cases to protect a juvenile's identity. *See* Tex. R. App. P. 9.8(d), 34.1.

should be excluded" would create an absurd result in the case before us. *See* Tex. Fam. Code Ann. §§ 54.08(a); 58.005, 58.007. In other words, because the legislature has mandated that judicial proceedings involving juveniles like R.J.D. who are at least fourteen years old shall be open to the public absent good cause shown to exclude the public, it would be nonsensical and would constitute an absurd result for us to construe other statutory provisions as cloaking the recordings of the two proceedings with confidentiality when there was no good cause shown in the trial court.[15] *See, e.g.*, *Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 73 (Tex. 2011) (declining to interpret statute in manner that would lead to absurd results) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008) ("[W]e construe the statute's words according to their plain and common meaning . . . unless such a construction leads to absurd results.")); *City of Laredo v. Villarreal*, 81 S.W.3d 865, 868–69 (Tex. App.—San Antonio 2002, no pet.) (declining to adopt one party's proposed construction of ordinance because it would lead to absurd results).

We hold that Respondent abused her discretion by refusing to vacate the courtroom closure orders issued in R.J.D.'s case on January 10 and January 22,

---

[15]We need not, and do not, determine whether recordings of proceedings made pursuant to section 54.09 may be confidential when the proceedings involve a juvenile younger than fourteen years old. Likewise, we need not, and do not, determine whether recordings of proceedings involving a juvenile fourteen years or older may be considered confidential when such proceedings are closed based on an on-the-record showing of good cause under section 54.08(a).

24

and we will order her to vacate these orders and to set aside her March 20, 2014 order denying Relators' motion to vacate the closure orders. The vacatur of the closure orders means that Relators are entitled to obtain a copy of the recording of the judicial proceedings, exclusive of any exhibits,[16] upon making payment and proper arrangements. *See Cianfrani*, 573 F.2d at 846 (recognizing that reversal of courtroom closure order would have the immediate effect of requiring the court to open the transcript of the hearing to the public, which court had previously declined to do); *accord Davenport v. Garcia*, 834 S.W.2d 4, 24 (Tex. 1992) (orig. proceeding) (explaining that "with the gag order lifted, there should be no impediment to viewing the court records"); *Lesikar v. Anthony*, 750 S.W.2d 338, 339–40 (Tex. App.—Houston [1st Dist.] 1988, orig. proceeding) (conditionally granting writ of mandamus and directing district court judge to vacate order that prevented relators from obtaining a copy of a reporter's record).

## VIII. CONCLUSION

Having determined that Respondent abused her discretion by issuing the January 10 and the January 22 courtroom closure orders and by subsequently refusing to vacate the courtroom closure orders, we conditionally grant a writ of

---

[16]Relators limit their request for relief to seeking the transcripts of the two proceedings at issue. Our opinion therefore addresses only Relators' access to the recordings of the proceedings on January 10 and on January 22 that were made pursuant to section 54.09. *See* Tex. Fam. Code Ann. § 54.09. We do not speculate on whether exhibits, if any, offered into evidence at these proceedings may or may not be confidential as a matter of law under other provisions of the Texas Family Code.

25

mandamus.  We are confident that Respondent will promptly vacate her January 10, 2014 and January 22, 2014 orders closing the courtroom in R.J.D.'s case; set aside her March 20, 2014 order denying Relators' motion to vacate those orders; and take immediate steps to make the transcripts of the January 10 and January 22 proceedings at issue here available to Relators upon payment and proper arrangements.  The writ will issue only if Respondent fails to promptly do so.


/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

DELIVERED:  August 12, 2014

26